05-3812(L)
USA v. Sanchez

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2006

(Argued: May 30, 2007          Decided: February 29, 2008)

Docket Nos. 05-3812(L), 05-3819(CON), 05-3824(CON), 05-4717(CON)

_____

UNITED STATES OF AMERICA,

Appellee,

- v. -

ALFONSO SANCHEZ, DARYL FOX, TROY KEYS, and RAYMOND FOX,
aka Knoc, aka Nack,

Defendants-Appellants.

_____

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

Appeals challenging prison terms imposed in the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, Judge, pursuant to provisions for enhanced punishment of repeat offenders, see 28 U.S.C. § 994(h) and 21 U.S.C. § 851, following defendants' convictions on substantive and conspiracy counts charging trafficking in cocaine and cocaine base, see 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846.

Affirmed as to defendant Raymond Fox; remanded for clarification as to defendants Sanchez and Keys and for clerical

correction of the judgments entered against them. Appeal of defendant Daryl Fox dismissed, with instruction for clerical correction of the judgment entered against him.

JESSICA A. ROTH, Assistant United States Attorney, New York, New York (Michael J. Garcia, United States Attorney for the Southern District of New York, Harry Sandick, Assistant United States Attorney, New York, New York, on the brief), for Appellee.

WILLIAM J. STAMPUR, New York, New York (Hurwitz Stampur & Roth, New York, New York, on the brief), for Defendant-Appellant Alfonso Sanchez.

LOUIS V. FASULO, New York, New York (Fasulo, Shalley & DiMaggio, New York, New York), representing Defendant-Appellant Daryl Fox, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967).

STACEY RICHMAN, Bronx, New York (Law Office of Murray Richman, Bronx, New York, on the brief), for Defendant-Appellant Troy Keys.

LINDA GEORGE, Hackensack, New Jersey, for Defendant-Appellant Raymond Fox.

KEARSE, Circuit Judge:

Defendants Alfonso Sanchez, Daryl Fox (or "Daryl"), Troy Keys, and Raymond Fox (or "Raymond") appeal from judgments entered in the United States District Court for the Southern District of New York, Miriam Goldman Cedarbaum, Judge, following their pleas of guilty to conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846, and

distribution of and possession with intent to distribute narcotics, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(A). Sanchez was sentenced principally to 188 months' imprisonment; Daryl Fox was sentenced principally to 135 months' imprisonment; and Keys was sentenced principally to 235 months' imprisonment; each of those prison terms was to be followed by a five-year term of supervised release. Raymond Fox, against whom the government had filed a prior-felony information pursuant to 21 U.S.C. § 851 giving notice that he was subject to the enhanced penalties set forth in 21 U.S.C. § 841(b)(1)(A), was sentenced principally to 240 months' imprisonment, to be followed by a 10-year term of supervised release. On appeal, Sanchez and Keys challenge the prison terms imposed on them, contending principally that the district court erred in believing that it lacked authority under 28 U.S.C. § 994(h) to impose shorter terms. Raymond Fox challenges the constitutionality of 21 U.S.C. § 851. Daryl Fox's attorney has moved to withdraw as counsel pursuant to Anders v. California, 386 U.S. 738 (1967), stating that Daryl has no nonfrivolous issues for appeal. For the reasons that follow, we affirm as to Raymond Fox; we dismiss the appeal of Daryl Fox, with instruction for the clerical correction of the judgment entered against him; and we remand for clarification, and for such further proceedings as may be necessary, with respect to the sentences imposed on Sanchez and Keys.

# I.  BACKGROUND

The events leading to the present prosecution, which followed a lengthy investigation by the Drug Enforcement Administration ("DEA") into narcotics trafficking in the New York area, are not in dispute.

## A.  The Events and the Pleas of Guilty

On November 5, 2003, DEA agents raided an apartment used by defendants in their narcotics distribution business.  As some of the agents approached the door of the apartment, others observed bags being thrown out of a window in the apartment and observed several people--including Sanchez, Daryl Fox, and Raymond Fox-- exiting through the window.  In the bags thrown through the window, the agents found approximately $60,000 in cash, 1,860 grams of cocaine, and 478 grams of cocaine base in a form commonly known as crack ("crack").

Defendants and others were subsequently arrested.  The pertinent superseding indictment charged defendants in two counts: (a) conspiracy to distribute and possess with intent to distribute more than five kilograms of a substance containing cocaine and more than 50 grams of a substance containing crack, in violation of 21 U.S.C. § 846 (count one); and (b) distribution of and possession with intent to distribute those quantities of substances containing cocaine and crack, respectively, in violation of 21 U.S.C. §§ 812,

841(a)(1), and 841(b)(1)(A) (count two). Under the pertinent provisions of § 841(b)(1)(A), the penalty for each of the above charges included imprisonment for a maximum of life or a minimum of 10 years, or, as to a defendant who committed such a crime after a prior conviction of a drug trafficking felony, imprisonment for a maximum of life or a minimum of 20 years. See 21 U.S.C. § 841(b)(1)(A) (penalties for distribution and possession with intent to distribute); id. § 846 (penalties for conspiracy are the same as those prescribed for the offense whose commission was the object of the conspiracy). Pursuant to 21 U.S.C. § 851(a)(1), the government filed an information against Raymond Fox (the "§ 851 Information") alleging that his record included prior convictions for drug trafficking felonies.

In the summer of 2004, Keys, Daryl Fox, and Raymond Fox pleaded guilty to counts one and two of the superseding indictment. Sanchez pleaded guilty to both of those counts insofar as they charged offenses with respect to cocaine but denied his involvement with crack; the district court accepted his plea as thus limited.

B. Sentencing

Daryl Fox entered his plea of guilty pursuant to a plea agreement. The agreement stated the understanding that, under the Sentencing Guidelines ("Guidelines"), Daryl's criminal history category ("CHC") was III; the parties stipulated that his total offense level would be 31. Accordingly, subject to a final

determination by the district court, the parties agreed that Daryl's range of imprisonment would be 135-168 months. Daryl agreed, inter alia, not to appeal any sentence imposing a prison term within or below that range. The prison term eventually imposed on Daryl was 135 months.

A presentence report ("PSR") was prepared on each of the defendants. The PSRs on Sanchez, Keys, and Raymond Fox, all of whom were in their early 30s at the time of the present offenses, reported that each of them had previously been convicted of at least two drug trafficking felonies or violent felonies, and that each was thus a career offender within the meaning of Guidelines § 4B1.1 (the "career-offender guideline"). Subsection (a) of that guideline states that

> [a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Guidelines § 4B1.1(a). Subsection (b) of that guideline provides that the CHC of a career offender is VI. See id. § 4B1.1(b). Career-offender status may also increase the defendant's offense level. Before any adjustment for acceptance of responsibility, the offense level of a career offender whose offense subjects him to a maximum prison term of life is at least 37. See id.

None of the defendants disputed the accuracy of the PSRs'

descriptions of their respective criminal records. The PSR for Sanchez and the PSRs for Keys and Raymond as ultimately amended found that the total offense level for each, taking into account a three-step decrease for acceptance of responsibility, was 34. Given an offense level of 34 and a CHC of VI, the Guidelines-recommended range of imprisonment for each of these three defendants was 262-327 months. The PSR for Raymond noted that, by reason of the § 851 Information filed against him, he was subject to a 20-year statutory minimum prison term.

Defendants were sentenced during the summer of 2005. In January 2005, the Supreme Court had decided United States v. Booker, 543 U.S. 220 (2005), holding that the Guidelines are not mandatory but advisory. Each defendant urged the district court to impose a prison term below the range recommended for him under the advisory Guidelines. A separate sentencing hearing was held for each defendant.

1. Keys

To the extent pertinent to his appeal, Keys's principal contention at sentencing was that career-offender status substantially overrepresented the seriousness of his criminal history. His record consisted of two prior felony convictions: a 1990 New York State conviction for criminal possession of a controlled substance in the third degree, for which he was sentenced to serve 1-3 years in prison and served approximately six months;

and a 1991 New York State conviction for attempted criminal possession of a controlled substance in the fifth degree, for which he was sentenced to 1½-3 years in prison and served the minimum. Keys pointed out that his prior offenses were committed when he was a very young man and that he had never served more than 18 months in jail--substantially less than the 10-year minimum sentence he was facing for the charges in the instant case. Keys's attorney argued that Keys, who had steady legitimate employment and a positive recommendation from one of his former employers, was not the type of person to whom career-offender status was intended to be applied and urged the court not to sentence him to 262-327 months' imprisonment as recommended by the PSR, but rather "to sentence him to the mandatory minimum" of 120 months (Keys Sentencing Transcript, June 28, 2005 ("Keys S.Tr."), at 8; see also id. at 21-23).

The district court stated that "because of the career offender statute it will certainly have to be more than th[e mandatory minimum]" (id. at 14), referring to 28 U.S.C. § 994(h), which instructs the Sentencing Commission (or "Commission") to assure that the guidelines governing career offenders specify a range of "imprisonment at or near the maximum term authorized." The Assistant United States Attorney ("AUSA") agreed:

> THE COURT: . . . . I have read and reread the statute on career offense, and . . . Congress has made it clear that a career offender must be above--
>
> MS. ROTH [AUSA]: The minimum.
>
> THE COURT: Well, more than above the minimum.

MS. ROTH: Near the maximum.

THE COURT: Well that's the statutory language. The statutory language makes clear that a career offender may not be given as short a sentence as somebody similarly situated, if there is such a thing, who is not a career offender.

So, there has to be some distinction based on career offense, and that means clearly, whatever else, Mr. Keys will go to prison for more than the mandatory minimum, under all circumstances that I can see here; that is, I have carefully considered enough to know that. How much more is really my problem.

(Keys S.Tr. 18-19.)

The court agreed that the 262-327-month range of imprisonment resulting from Keys's designation as a career offender overrepresented the seriousness of his criminal history. Recognizing both that the Guidelines provided that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted," Guidelines § 4A1.3(b)(1), and that as amended in October 2003 the Guidelines provided that such a departure "may not exceed one criminal history category," id. § 4A1.3(b)(3)(A), the court reduced Keys's CHC by one step, from VI to V. That reduction, in combination with an offense level of 34, resulted in an advisory Guidelines range of 235-293 months. The court stated, "I think that in this case 235 is the appropriate number." (Keys S.Tr. 32.) Although Keys's attorney argued "that that is still an overstatement" of Keys's criminal

history (id.), the court stated that it read "[t]he career offender statute . . . as itself placing a substantial limit on the appropriate sentence" (id. at 35).

The court sentenced Keys to 235 months, the bottom of what it concluded was the applicable advisory-Guidelines range, stating that

> [i]t is really under the statute on career offender that I feel bound to carry out the intention of Congress as expressed in that statute, to impose a substantially heavier sentence on a career offender, and I do so with that understanding. . . . I have studied that statute over and over in an effort to discern the intention of Congress, and that is the best I can do in this case.

(Id. at 47-48.)

2. Sanchez

At his plea hearing, Sanchez had argued that his role in the conspiracy was minor, i.e., that he merely delivered drugs and collected money when instructed to do so. He had also denied any involvement with crack, and his plea of guilty had been accepted with respect to trafficking in cocaine only. At his sentencing hearing, Sanchez did not dispute that he met the definition of career offender; his PSR credited him with at least two prior felonies that qualified as crimes of violence. Sanchez's attorney argued, however, that while Sanchez was a career offender "technically," he was not one "in reality" (Sanchez Sentencing Transcript, June 29, 2005 ("Sanchez S.Tr."), at 3), noting that his

role in these offenses was minor, that Sanchez had never before been convicted of a drug offense, and that his most serious prior crimes had been committed more than 10 years earlier, when he was a teenager or very young man. Sanchez's attorney urged the court to depart downward to 120 months, the statutory minimum, from the PSR-recommended imprisonment range of 262-327 months.

The district court noted, as it had in sentencing Keys on the previous day, that where career-offender status overstates a defendant's criminal history, Guidelines § 4A1.3(b) permits a CHC reduction from VI to V. But the court stated, again referring to 28 U.S.C. § 994(h),

> [t]here is a statute. This is not entirely a guidelines matter. The Congress defined career criminal and . . . the criminal history of this defendant may or may not be overstated. His role in the offense may justify an adjustment, but whether he fits the definition in the statute is a different matter.

(Sanchez S.Tr. 5.) After the AUSA indicated that the court was entitled, even "post Booker," to consider a defendant's role in determining an appropriate sentence under 18 U.S.C. § 3553, the court stated

> I do find that the factors set out by Congress for sentencing, which suggest that every sentence shall be individually determined, make[] at least in this case that offense level immune to consideration of role in the offense. To that extent as applied in this particular case, I find that applying offense level 37 [sic] to Alfonso Sanchez results in a sentence that is not consistent with the factors set out by Congress in determining sentence; that the sentence that would result is clearly longer than necessary for any purpose of deterrence.

(Id. at 15.)  The court stated that if it were allowed, under the Guidelines, to adjust Sanchez's offense level for his role in the offense, it

> would set the offense level at 32, deducting two levels from the 34 that appears in the presentence report . . . .

> . . . .

> I find that on the basis of all the information that has been presented to me in this case, and on the basis of the plea allocution of Mr. Sanchez, that he had no contact with crack and that his role was minor in this arrangement.  Therefore, if I were able to apply a 2-level deduction for minor offense role his level would be 32[,] and if I also were to follow the policy pronouncement of the Sentencing Commission . . . where the criminal history of a career offender substantially overstates the actual history, in this case because the two offenses taken into consideration were committed when the defendant was in his teens and the length of those sentences [was short] as compared to the length of any sentence to which he is now subject, [the resulting sentence would be] far beyond anything required for deterrence.  That is, he has not served very much time in prison so one would expect that he could be deterred by even the mandatory minimum of ten years, which is a very substantial number.  But if I were to make the calculation that I have described, the guideline range for level 32 and criminal history 5 would be 188 to 235 months.

> I would then set the career offender sentence at 188 months.

(Id. at 15-17 (emphases added).)

Although agreeing with Sanchez's attorney that a sentence of 120 months would provide sufficient deterrence, the court said,

> I also have to--and do--carefully consider the intent of Congress in enacting a statute that defines career criminal and that provides that a career criminal must be sentenced above the

_mandatory minimum_.

(_Id_. at 17 (emphasis added).)  The court added that

> this is not a matter of guidelines.  This is a matter of a congressional enactment which directs, as I read it. . . .  Congress has provided that a career offender, as defined by statute, must be sentenced above the mandatory minimum.

(_Id_. at 18; _see also id_. at 19 ("[A]s I read the congressional statute a career criminal may not be sentenced to the minimum."); _id_. at 20 ("I feel bound by the statute itself . . . . not to reduce a career criminal sentence to the level of a mandatory minimum."); _id_. at 21-22 ("I read [the at-or-near-the-maximum language] as meaning that Congress has provided that what Congress defined as a career offender requires some time in addition to the mandatory minimum.").)

The AUSA stated, "I am not sure that 28 U.S.C. 994 requires the court per se to impose a sentence higher than the maximum [_sic_]"; and she interpreted the court as saying that § 994 was merely a factor to be considered, but the court disagreed:

> MS. ROTH:  . . . .  I don't understand your Honor to be saying that you feel you, as a matter of law, under 994 could not under any circumstances impose a sentence that was the mandatory minimum for a career offender.
>
> THE COURT:  Well, I think I _am_ saying that.

(Sanchez S.Tr. 20 (emphasis added).)

The court went on to state that, "in any event, in this particular case I am of the view that even if I could I would not impose a sentence less than I have determined."  (_Id_. at 21.)  The

AUSA asked

> whether[,] analyzing objectively the factors under 3553 taken altogether and including in that consideration Congress' intent in enacting 994, <u>is this the considered judgment of the court that this is an appropriate sentence for this defendant?</u> I think that is the question.
>
> THE COURT: <u>Yes, of course. I would not set it otherwise.</u>
>
> <u>But I do feel constrained by the statute. I think that is pretty clear.</u>

(<u>Id</u>. at 24 (emphases added).) Sanchez's attorney immediately stated:

> My colleague is trying to prepare the circuit for review, Judge, and I appreciate your comments because <u>I think you have made it perfectly clear that if you could you might impose a lesser sentence</u>.
>
> THE COURT: <u>That is correct</u>.

(<u>Id</u>. at 24-25 (emphases added); <u>see also</u> <u>id</u>. at 23 ("If I were free to choose the sentence we would be in an entirely different situation.").)

Ultimately, the court departed downward in criminal history category to a CHC of V in accordance with Guidelines § 4A1.3(b); and, going beyond what the court appeared to believe was sanctioned by the Guidelines, the court further reduced the prison time to be served by the equivalent of two Guidelines-offense-level steps in consideration of Sanchez's role in the offense. Such a two-step reduction in offense level under the Guidelines would have resulted in a Guidelines range of 188-235 months. The court ordered

Sanchez to serve 188 months.

### 3. Raymond Fox

Raymond Fox was sentenced some five weeks later. His attorney did not dispute that Raymond's record included the prior narcotics felony convictions set forth in the government's § 851 Information; nor did she argue that Raymond was not a career offender. She argued, however, that the effect of the government's election to file the § 851 Information against Raymond--and only Raymond--was to subject him to a statutory mandatory minimum term of 20 years' imprisonment, whereas his position in the narcotics enterprise was similar to that of Keys, for whom the court had ordered a prison term of less than 20 years. She argued that, in order to avoid imposing disparate sentences on similarly situated defendants, the court had discretion to sentence Raymond to less than the statutory minimum of 20 years. The district court rejected this contention, stating that its duty was to follow the will of Congress as expressed in § 841(b)(1)(A)'s provision setting the minimum allowable sentence.

Raymond's attorney then urged the court, if it could not sentence Raymond below the statutory minimum, to sentence him to no more than the minimum in order to lessen the disparity--occasioned only by the government's decision to file a § 851 Information against Raymond but not Keys--between the sentences imposed on similarly situated defendants. The court had initially stated that

it read "the Congressional language" of 28 U.S.C. § "994 . . . as requiring in the case of a career offender that the sentence not even be at the minimum." (Raymond Fox Sentencing Transcript, August 2, 2005 ("Raymond S.Tr."), at 10 (emphasis added).) However, the court was persuaded by the proportionality argument; and the government, although it had opposed the request that Raymond be sentenced below the statutory minimum, made no response to the request that he be sentenced at the minimum.

The court sentenced Raymond to 240 months', or 20 years', imprisonment, stating

> I set the minimum sentence required by law because
> to sentence Mr. Fox to any more time would violate
> the strong interest that both the Congress and the
> Sentencing Commission have shown in proportionality,
> and that is one of the important factors set out in
> the statute and it is, indeed, an important factor
> in the administration of justice.

(Id. at 19.)

C. Issues on Appeal

Defendants have appealed their sentences. Daryl Fox's attorney has moved to withdraw as counsel and has filed an Anders brief discussing the record and stating that Daryl has no nonfrivolous arguments to support his appeal. The government has moved to dismiss Daryl's appeal on the ground that, in his plea agreement, he waived the right to appeal the sentence that was ultimately imposed on him. Those motions have merit and are granted, with instruction for a clerical correction to be made to

the judgment entered against him, see Part II.E. of this opinion.

Sanchez and Keys contend that the district court erred in believing that 28 U.S.C. § 994(h) deprived it of authority to order shorter prison terms than those it imposed. Keys also argues that the court failed to consider the sentencing factors set out in 18 U.S.C. § 3553 and that his sentence is unreasonable. For the reasons stated in Part II.B. below, we conclude that § 994(h) did not deprive the district court of authority to impose shorter prison terms than those it imposed; and, as discussed in Part II.C. below, we remand for clarification as to whether with that understanding of § 994(h) the court would have imposed shorter terms, and for further proceedings, if necessary, with respect to the sentences of Sanchez and Keys.

Raymond Fox makes two constitutional challenges. He contends (a) that 21 U.S.C. § 851 violates the principle of separation of powers, and (b) that the government's filing of the § 851 Information against him without explanation violated his right to due process. For the reasons stated in Part II.D. below, we reject these contentions.

## II. DISCUSSION

A. Post-Booker Procedures and Standards of Review

Following the Supreme Court's decision in Booker, the district court may impose either a Guidelines sentence or a non-

Guidelines sentence. See, e.g., Booker, 543 U.S. at 245-46; United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005) ("Crosby"). In arriving at either type of sentence, the sentencing judge must consider, inter alia, the factors set forth in 18 U.S.C. § 3553(a), including the imprisonment ranges recommended by the advisory Guidelines and the available departure authority. See, e.g., United States v. Rattoballi, 452 F.3d 127, 131-32 (2d Cir. 2006) ("Rattoballi"); United States v. Selioutsky, 409 F.3d 114, 118 (2d Cir. 2005) ("Selioutsky"); Crosby, 397 F.3d at 111-12.

In the post-Booker era, we review sentences for reasonableness, see, e.g., Booker, 543 U.S. at 261; United States v. Fernandez, 443 F.3d 19, 26 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006); Crosby, 397 F.3d at 113, under an abuse-of-discretion standard, see, e.g., Gall v. United States, 128 S. Ct. 586, 600 (2007); United States v. Fernandez, 443 F.3d at 27; Crosby, 397 F.3d at 114. "Reasonableness review involves consideration of both the length of the sentence (substantive reasonableness) and the procedures used to arrive at the sentence (procedural reasonableness)." United States v. Canova, 485 F.3d 674, 679 (2d Cir. 2007).

As to substantive reasonableness, "[s]ection 3553(a) . . . sets forth numerous factors that guide sentencing. Those factors [are to] guide appellate courts . . . in determining whether a sentence is unreasonable." Booker, 543 U.S. at 261. Thus, in reviewing a sentence for "substantive reasonableness, . . . we

consider whether the length of the sentence is reasonable in light of the factors outlined in 18 U.S.C. § 3553(a)." Rattoballi, 452 F.3d at 132. That section provides in part that the court, in determining the particular sentence to be imposed, is to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); and it provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," id. § 3553(a). Paragraph (2) of subsection (a) requires the court to consider "the need for the sentence" that is imposed

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2). Among the other factors that § 3553(a) requires the court to consider are the kinds of sentences and the sentencing ranges established for "the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission," id. § 3553(a)(4)(A)(i); "any pertinent policy statement . . . issued

by the Sentencing Commission," id. § 3553(a)(5)(A); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," id. § 3553(a)(6).

As to procedural reasonableness, we seek to determine, inter alia, whether the sentencing judge "select[ed] a sentence in violation of applicable law," or "committed an error of law in the course of exercising discretion," Crosby, 397 F.3d at 114. A sentence would be procedurally unreasonable if, for example, the sentencing judge failed to consider the factors listed in § 3553(a), including the relevant guidelines and policy statements. It would also be procedurally unreasonable if the court made "[a]n error in determining the applicable Guideline range or the availability of departure authority," Selioutsky, 409 F.3d at 118 (emphasis added); see, e.g., Crosby, 397 F.3d at 114-15, or erroneously interpreted a pertinent statutory provision as restricting its authority to impose a given non-Guidelines sentence.

Ordinarily, the matter of whether to grant a departure or a non-Guidelines sentence lies within the discretion of the sentencing judge. See, e.g., Selioutsky, 409 F.3d at 118-19. Under the pre-Booker sentencing regime, a defendant had no right to appeal the sentencing court's discretionary refusal to grant a downward departure, see, e.g., United States v. Cuevas, 496 F.3d 256, 267-68 (2d Cir. 2007); United States v. Stinson, 465 F.3d 113, 114 (2d Cir. 2006), or to appeal the extent of a downward departure, see, e.g.,

United States v. Hargrett, 156 F.3d 447, 450 (2d Cir.), cert. denied, 525 U.S. 1048 (1998); United States v. Doe, 996 F.2d 606, 607 (2d Cir. 1993). However, the matter of whether the court has the authority to impose a given sentence--either as a Guidelines departure or as a non-Guidelines sentence--is a question of law, see, e.g., United States v. Valdez, 426 F.3d 178, 184 (2d Cir. 2005) (a refusal to grant a departure, or a greater departure, is reviewable to the extent that the sentencing court may have misapprehended its departure authority); United States v. Belk, 346 F.3d 305, 314 (2d Cir. 2003), cert. denied, 540 U.S. 1205 (2004); United States v. Rivers, 50 F.3d 1126, 1130 (2d Cir. 1995) ("Rivers") ("A defendant may seek appellate review of a refusal to depart downward if that refusal was based on the mistaken conclusion that the court did not have the legal authority to depart."); United States v. Sharpsteen, 913 F.2d 59, 63 (2d Cir. 1990) ("court's mistaken conception that it lacked the authority" to depart on a given ground is "an error of law"). We review the question of the existence of departure authority de novo. See, e.g., United States v. Belk, 346 F.3d at 314 ("If the district court's refusal to depart rested on a 'misapprehension' of its legal authority, an appeal is proper, and we review the propriety of that legal determination de novo." (other internal quotation marks omitted)). Likewise the matter of whether any statute deprives the sentencing court of authority to impose a given sentence is a question of law to be reviewed de novo.

B.  28 U.S.C. § 994

As discussed in Part I.B. above, the PSRs' Guidelines calculations for Sanchez and Keys resulted in recommended imprisonment ranges of 262-327 months.  Sanchez and Keys do not suggest that there was any error in these calculations or that the district court misinterpreted the Guidelines.  Rather, they contend that the court misapprehended its departure authority.  The record makes it clear that the district judge understood that the Guidelines, after the Supreme Court's decision in Booker, are advisory rather than mandatory, and that she was under no misimpression that her authority to grant a downward departure, or a greater departure than she granted, from the Guidelines-recommended range of imprisonment for career offenders was eliminated by the Guidelines.  In sentencing Sanchez and Keys, however, the judge indicated that she was deprived of the authority to depart farther by 28 U.S.C. § 994(h).  (See, e.g., Keys S.Tr. 13 ("[U]ltimately I will have to decide not what the sentencing commission did for career offender[s] but what Congress did for career offender[s] because there is a statutory provision that I have to consider and apply as best I can."); id. at 48 (after studying the statute, 235 months "is the best I can do in this case"); Sanchez S.Tr. 23 ("If I were free to choose the sentence we would be in an entirely different situation.").)  For the reasons that follow, we conclude that the granting of a reasonable non-Guidelines sentence or of a larger downward departure was not barred

by § 994.

Section 994 was enacted as part of the Sentencing Reform Act of 1984 (the "Act"), 18 U.S.C. § 3551 et seq.; 28 U.S.C. §§ 991-998. To the extent pertinent here, § 994(h) provides that

> [t]he Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--
>
> (1) has been convicted of a felony that is--
>
> (A) a crime of violence; or
>
> (B) an offense described in . . . 21 U.S.C. 841 . . . and
>
> (2) has previously been convicted of two or more prior felonies, each of which is--
>
> (A) a crime of violence; or
>
> (B) an offense described in . . . 21 U.S.C. 841 . . . .

28 U.S.C. § 994(h).

The career-offender guideline, § 4B1.1, was promulgated by the Sentencing Commission in response to this instruction. Thus, as quoted in Part I.B. above, subsection (a) of that guideline defines "career offender," in terms closely tracking the statutory language, as a person who was at least 18 years of age when he committed the current violent felony or drug trafficking felony and who had previously been convicted of at least two prior violent or drug trafficking felonies. Guidelines § 4B1.1(a). In order to assure a sentencing range at or near the statutory maximum for such a

- 23 -

defendant, subsection (b) provides that "[a] career offender's criminal history category in every case under this subsection shall be Category VI," which is the highest category, and it sets out a table of offense levels to be applied "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable," id. § 4B1.1(b). Under the subsection (b) table, the higher the statutory maximum prison term for the offense of conviction, the higher the assigned offense level. For example, assuming no reduction for acceptance of responsibility, the offense level for a career offender whose offense carries a maximum prison term of 25 or more years is 34; that offense level, combined with a CHC of VI, results in a Guidelines-recommended range of imprisonment of 262-327 months, or 21.83 to 27.25 years. The offense level for a career offender whose offense carries a maximum prison term of life is 37; that offense level, combined with a CHC of VI, results in a Guidelines-recommended range of imprisonment of 360 months to life. See id. These guidelines reflect the instructions given by Congress in 28 U.S.C. § 994(h).

Section 994(h), however, by its terms, is a direction to the Sentencing Commission, not to the courts, and it finds no express analog in Title 18 or Title 21. While 21 U.S.C. § 841(b) expressly establishes the minimum and maximum prison terms that the court is allowed to impose for violations of § 841(a), there is no statutory provision instructing the court to sentence a career

offender at or near the statutory maximum. And while the sentencing statute expressly directs the district court to "consider" the "sentencing range established for . . . the applicable category of defendant as set forth in the guidelines," 18 U.S.C. § 3553(a)(4)(A), it does not instruct the court to impose such a sentence. See generally United States v. LaBonte, 520 U.S. 751, 761 n.5 (1997) (discussing § 994(h) and distinguishing that section from 18 U.S.C. § 5037(c)(1)(C) (establishing the maximum prison term that "may be ordered for a . . . juvenile delinquent"), which "involved a directive to a sentencing court, . . . whereas 28 U.S.C. § 994(h) is a directive to the Commission.").

The absence of any express statutory instruction to the court to sentence a career offender to a prison term at or near the statutory maximum was not an oversight. In deliberating on what provisions to include in the sentencing statute itself, Congress considered an amendment proposed by Senator Kennedy and others ("Kennedy amendment") to S. 2572, 97th Cong. (1982), one of the bills that was a precursor to the Act, which would have included such a provision. The proposed Kennedy amendment, like 28 U.S.C. § 994(h), focused on persons (albeit on persons whose ages were at least 16 rather than 18) who had been convicted of two prior violent felonies or drug trafficking felonies. That amendment would have included in the sentencing statute a section stating expressly that "[a] career criminal" "shall receive the maximum," or approximately the maximum, penalty for the current offense. 128 Cong. Rec. 26512,

26518 (Sept. 30, 1982) (emphasis added).

No such provision was included in the legislation as enacted. Instead, the Act included § 994(h). The Report of the Senate Judiciary Committee, see S. Rep. No. 98-225 (1983) ("Senate Report" or "Report"), reprinted in 1984 U.S. Code Cong. & Admin. News ("USCCAN") 3182, stated that the

> proposed 28 U.S.C. 994(h) requires the sentencing guidelines to specify a term of imprisonment at or near the statutory maximum for a third conviction of a felony that involves a crime of violence or drug trafficking,

Senate Report at 120, reprinted in 1984 USCCAN at 3303, and explained that

> [s]ubsection (h) was added to the bill in the 98th Congress to replace a provision proposed by Senator Kennedy enacted in S. 2572, as part of proposed 18 U.S.C. 3581, that would have **mandated a sentencing judge** to impose a sentence at or near the statutory maximum for repeat violent offenders and repeat drug offenders. The Committee believes that such a directive to the Sentencing Commission will be more effective; the guidelines development process can assure consistent and rational implementation of the Committee's view that substantial prison terms should be imposed on repeat violent offenders and repeat drug traffickers.

Senate Report at 175, reprinted in 1984 USCCAN at 3358 (emphases added). The Report stated that "the guidelines would reserve the upper range of the maximum sentence for offenders who repeatedly commit offenses," and that "the Sentencing Commission will be promulgating guidelines that will recommend an appropriate sentence for a particular category of offender who is convicted of a particular category of offense . . . ." Senate Report at 114,

reprinted in 1984 USCCAN at 3297 (emphasis added).

Consistent with Congress's reference to "the guidelines development process," Senate Report at 175, reprinted in 1984 USCCAN at 3358, the commentary to the Guidelines notes that the Sentencing Commission's views of what is an appropriate prison term for a career offender are subject to revision "over time":

> [T]he Commission has modified th[e] definition [of career offender] in several respects to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate and to avoid "unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct . . . ." 28 U.S.C. § 991(b)(1)(B). The Commission's refinement of this definition over time is consistent with Congress's choice of a directive to the Commission rather than a mandatory minimum sentencing statute . . . .

Guidelines § 4B1.1 Background (emphasis added).

In sum, in light of the facts (1) that § 994(h)'s instruction with reference to sentences at or near the statutory maximum is directed to the Sentencing Commission, (2) that there is no statutory provision instructing the courts to sentence a career offender at or near the maximum, and (3) that Congress consciously rejected a proposal "that would have mandated a sentencing judge" to impose such a sentence, Senate Report at 175, reprinted in 1984 USCCAN at 3358, and instead instructed the Commission to promulgate guidelines to "recommend" high sentences for career offenders, id. at 114, reprinted in 1984 USCCAN at 3297, we conclude that Congress did not intend § 994(h) to deprive the courts of authority to impose

on a career offender a prison term that is not near the statutory maximum.

This conclusion does not mean that we think a sentencing court would be free to ignore the policy considerations reflected in § 994(h). The court should, as discussed in Part II.C.3. below, take Congress's views on repeat offenders into account in determining the appropriate sentence in light of the sentencing considerations set out in 18 U.S.C. § 3553(a).

C.   The Effect of § 994(h) in the Present Case

On these appeals, the government, while describing § 994(h) as "a provision that calls for career offenders to be sentenced at or near the statutory maximum" (Government brief on appeal at 31 (emphasis added)), has stopped short of arguing that § 994(h) deprived the district court of authority to sentence a career offender to a prison term below such a level. Instead, the government contends that the district court did not misapprehend its sentencing authority, pointing out that in sentencing the then-33-year-old Sanchez to 188 months and the then-34-year-old Keys to 235 months, the district court sentenced those two defendants "far below the statutory maximum" (Government brief on appeal at 31 (emphasis added)), to terms that were closer to the statutory minimum of 120 months than to the maximum of life (see, e.g., id. at 41). It also points out that the court in fact sentenced Raymond Fox to the statutory minimum (see id. at 41)--a sentence that the

government has not cross-appealed to challenge. The government argues instead that, notwithstanding several of the court's statements with respect to § 994(h), the court "clearly understood its authority to impose the sentence that it deemed correct, in light of all of the pertinent considerations" (id. at 45 n.*).

In general, we are "entitled to assume that the sentencing judge understood all the available sentencing options, including whatever departure authority existed in the circumstances of the case." Rivers, 50 F.3d at 1131. However, we are wary of making such an assumption "where the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available [sentencing] option," and we are more inclined, in the face of such ambiguity, to remand for clarification. Id. at 1132; see, e.g., United States v. Clark, 128 F.3d 122, 124 (2d Cir. 1997). We would not remand, however, if the record indicated clearly that the district court would have imposed the same sentence had it had an accurate understanding of its authority. See, e.g., United States v. McHugh, 122 F.3d 153, 158 (2d Cir. 1997); id. at 159 (Newman, J., concurring); United States v. Larson, 112 F.3d 600, 606 (2d Cir. 1997); see generally Williams v. United States, 503 U.S. 193, 203 (1992); Fed R. Crim. P. 52(a) (an error or irregularity that does not affect a party's substantial rights "must be disregarded").

In the present case, the record does not indicate that the court understood, at the time it sentenced Sanchez and Keys, that § 994(h) did not necessarily restrict its sentencing authority and

does not make it clear that the court would have imposed the same sentences if that section did not impose such a restriction.

## 1. Sanchez

Notwithstanding the fact that the district court sentenced Sanchez to 188 months, well below the 262-327-month range recommended by the advisory Guidelines, the transcript of his sentencing leaves the strong impression that the district court viewed § 994(h) as depriving it of authority to impose on Sanchez a non-Guidelines sentence or a Guidelines-departure sentence at, or near, the statutory minimum. As set out in greater detail in Part I.B.2. above, the court's early comments addressing Sanchez's departure request indicated its view that Sanchez "could be deterred by even the mandatory minimum of ten years, which is a very substantial number" (Sanchez S.Tr. 16); but the court stated that it interpreted "Congress [as] enacting a statute . . . that provides that a career criminal must be sentenced above the mandatory minimum." (Id. at 17 (emphases added)). The court indicated that it read § 994(h) as a mandatory provision, referring to it as "a congressional enactment which directs." (Id. at 18.) The court went on to say, inter alia, that "Congress has provided that a career offender . . . must be sentenced above the mandatory minimum" (id. (emphasis added)); that "as I read the congressional statute a career criminal may not be sentenced to the minimum" (id. at 19 (emphases added)); that it interpreted "at or near the maximum" to

- 30 -

mean "that Congress has provided that . . . career offender [status] requires some time in addition to the mandatory minimum" (id. at 21-22 (emphases added)); and that it felt that as a matter of law, under § 994, it could not under any circumstances impose a sentence that was the mandatory minimum for a career offender: "I feel bound by the statute itself . . . . not to reduce a career criminal sentence to the level of a mandatory minimum" (id. at 20 (emphases added)).

To be sure, as the government notes, the district court stated at one point that "in this particular case I am of the view that even if I could I would not impose a sentence less than I have determined" (id. at 21 (emphases added)); and thereafter the court stated that it believed the prison term it was ordering for Sanchez was "an appropriate sentence for this defendant" (id. at 24). However, shortly before characterizing a 188-month prison term for Sanchez as appropriate, the court had said "[i]f I were free to choose the sentence we would be in an entirely different situation" (id. at 23); and immediately after characterizing the 188-month sentence as appropriate, the court added, "[b]ut I do feel constrained by the statute. I think that is pretty clear" (id. at 24 (emphasis added)). Finally, when Sanchez's attorney said "I think you have made it perfectly clear that if you could you might impose a lesser sentence," the court said "[t]hat is correct." (Id. at 24-25 (emphasis added).)

The record thus seems clear that the district court

believed that § 994(h) deprived it of authority to grant Sanchez a non-Guidelines sentence or a downward departure below the 188-month prison term that the court imposed. And as to whether the same sentence would have been imposed if the court had believed that § 994 did not deprive it of that authority, the court's statements-- e.g., that it would not have imposed a lower sentence on Sanchez "even if [it] could," and that it might impose a lower sentence "if [it] could"--reflect considerable ambiguity.

In these circumstances, we consider it appropriate to remand the Sanchez matter to the district court for clarification. See Part II.C.3. below.

2. Keys

The transcript of Keys's sentencing to a 235-month prison term, although it contains fewer conflicting statements, similarly leaves us in doubt as to whether the district court meant that even if § 994(h) did not limit its sentencing authority, Keys would still have received a 235-month prison term. At the sentencing of Keys, one day before the sentencing of Sanchez, the statements of the district court reflected the court's understanding--and apparently the then-understanding of the government--that § 994 required that a career offender receive a prison term at or near the statutory maximum. Thus, early in the discussion of Keys's request for a departure to the statutory minimum, the court stated, "I think because of the career offender statute," the prison term to be

imposed on Keys "will certainly have to be more than" the statutory "minimum of ten years." (Keys S.Tr. 14.) And when the court stated that § 994(h) required that the prison term for a career offender be "more than above the minimum," the AUSA added, "[n]ear the maximum." (Id. at 18 (emphases added).) The court stated that "[t]he statutory language makes clear" that Keys, as a career offender, "will go to prison for more than the mandatory minimum, under all circumstances that I can see here; that is, I have carefully considered enough to know that. How much more is really my problem." (Id. at 18-19.)

After determining that if it assigned Keys a CHC of V rather than VI the Guidelines-recommended range of imprisonment would be 235-293 months, the court said, "I think that in this case 235 is the appropriate number" (id. at 32 (emphasis added)). But when Keys's attorney argued that 235 months was "still an overstatement" (id.), the court stated that the "real problem" was that "[t]he career offender statute I read as itself placing a substantial limit on the appropriate sentence under that statute" (id. at 35 (emphasis added)). After sentencing Keys to 235 months, the court stated:

> It is really under the statute on career offender[s] that I feel bound to carry out the intention of Congress as expressed in that statute, to impose a substantially heavier sentence on a career offender, and I do so with that understanding. . . . I have studied that statute over and over in an effort to discern the intention of Congress, and that is the best I can do in this case.

(Id. at 47-48 (emphases added).)

It appears from the above statements that the district court may have believed that § 994(h) limited its authority to impose a sentence below 235 months' imprisonment; and although the court had carefully considered the circumstances relating to Keys, it is unclear to us whether the court's statements meant that the court would have sentenced Keys to the same prison term in the absence of the perceived limitation. In all the circumstances, including the court's statements that "235 is the appropriate number" (Keys S.Tr. 32), but that it read the "career offender statute . . . as itself placing a substantial limit on the appropriate sentence" (id. at 35), as well as the government's own stance at the Keys hearing that § 994(h) required Keys to be sentenced "[n]ear the maximum" (id. at 18), we conclude that a remand for clarification with respect to Keys is prudent as well.

We note that the district court sentenced Raymond Fox to the statutory minimum prison term applicable to him, i.e., 240 months, and the government would have us infer from that fact that the court was aware that § 994(h) did not require it to sentence Sanchez and Keys above the 120-month mandatory minimum that was applicable to them (Government brief on appeal at 41). Such an inference is impermissible in light of the court's statements some five weeks earlier in the course of sentencing Sanchez and Keys.

3. Proceedings on Remand

Our holding that § 994(h) does not make it mandatory for a sentencing court to sentence a career offender to a prison term at or near the statutory maximum does not, of course, mean that the court would be free to ignore the Congressional policy reflected in that section. "We may find a sentence unreasonable if the district court ignores congressional policies or if it fails to give 'respectful consideration to the Guidelines,'" Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

As the district court in this case observed, § 994(h) reflects Congress's policy judgment that violent felonies and drug trafficking felonies generally warrant more severe sentences when committed by recidivists than when committed by first- or second-time offenders. See also Mistretta v. United States, 488 U.S. 361, 376 n.10 (1989) (the legislative "history indicates Congress' intent that the 'criminal history . . . factor include[] . . . whether the defendant is a "career criminal."'" (quoting Senate Report at 174, reprinted in 1984 USCCAN at 3357). That Congressional policy judgment, and the resulting definition of career offenders, must be taken into account in connection with several of the sentencing factors set out in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the history and characteristics of the defendant be considered. But it also requires, as discussed in Part II.A. above, that the court consider the range of imprisonment recommended by the advisory Guidelines, including the "applicable category of offense committed by the

applicable category of defendant," 18 U.S.C. § 3553(a)(4)(A). As the career-offender guideline, § 4B1.1, reflects the instructions given to the Commission in 28 U.S.C. § 994(h) to assure that the Guidelines prescribe severe penalties for career offenders, the court is required--whether it decides to impose a Guidelines or a non-Guidelines sentence--to consider the recommended penalties.

In addition, as pointed out in the Sentencing Commission's introductory comments to Chapter Four of the Guidelines, which includes the career-offender guideline, "[a] defendant's record of past criminal conduct is directly relevant" to several of the purposes of sentencing set out in § 3553(a)(2), including just punishment, deterrence, and protection of the public from further crimes of the defendant:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

Guidelines Ch. 4, Pt. A, Introductory Commentary. At the same time, as the district court here noted, the sentencing court must consider other factors set out in § 3553(a), including the need for the sentence imposed "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

similar conduct," 18 U.S.C. § 3553(a)(6).

In sum, the policy concerns reflected in § 994(h) are relevant to several of the sentencing factors that the court must consider in complying with § 3553(a). Although Congress declined to adopt a statutory provision making it mandatory for the courts to sentence career offenders at or near the statutory maximum, it enacted § 994(h) to require the Commission to recommend such sentences for that category of defendants, and that guidance, as part of the § 3553(a) analysis, must be taken into account.

In the present case, of course, as described in Parts I.B.1. and I.B.2. above, there was no failure by the district court to consider the Congressional policy, and the court took great pains not to substitute its judgment for that of Congress. The difficulty we have on these appeals is that, as discussed in Parts II.C.1. and II.C.2. above, in sentencing Sanchez and Keys the court made statements indicating its belief that § 994(h) restrained it from imposing shorter sentences than it did and also stated at times that the sentences imposed were appropriate. The record thus leaves us uncertain as to whether the district court meant that the sentences imposed on these defendants were appropriate within the perceived restraint of § 994(h) or were the same sentences that would have been imposed if § 994(h) did not deprive it of the authority to impose lower sentences. Accordingly, without vacating the sentences imposed on Sanchez and Keys, we remand as to those two defendants in order to permit the district court to clarify the record as to the

meaning of its statements.

On remand, the district court's first step should be to provide the necessary clarifications. This may be done either by filing brief written statements or placing explanations on the record. See, e.g., Rivers 50 F.3d at 1132. The defendant's presence is not required for the initial step at which the court issues its clarification. See generally id.; Crosby 397 F.3d at 120.

If, as to either defendant, the clarification reveals that the court meant that it would have imposed the same sentence if it understood that § 994(h) did not deprive it of the authority to impose a shorter prison term than it did, then as to that defendant, the district court should not disturb the sentence imposed, and-- except as indicated in Part II.E. below--it need take no further action. See, e.g., Crosby, 397 F.3d at 120, Clark, 128 F.3d at 124; Rivers, 50 F.3d at 1132.

If as to either Sanchez or Keys the court clarifies that its determination of the prison term imposed on that defendant was affected by its view that § 994(h) deprived it of the authority to impose a lower sentence, the court should exercise its discretion to consider a lower sentence, either as a Guidelines departure or as a non-Guidelines sentence. In this event, the court should vacate the sentence and, with the relevant defendant present, resentence the defendant in accordance with § 3553 and this opinion, giving an appropriate explanation of its decision.

Because a remand is warranted for clarification of whether the district court meant that it would have imposed the same sentences with the correct understanding of § 994(h), we have no occasion to consider at this time Keys's additional contentions that the district court failed to consider the § 3553(a) factors and that his sentence is unreasonably long. See, e.g., United States v. Ortega, 94 F.3d 764, 771 (2d Cir. 1996).

D. Raymond Fox's Constitutional Contentions

In general, the term of imprisonment for a person convicted of violating 21 U.S.C. § 841(a)(1) by trafficking in the quantities of cocaine and crack charged in the present case is "not [to] be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A). Longer minimum prison terms are provided if there are aggravating circumstances. To the extent pertinent here, that penalty section provides that "[i]f any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment . . . ." Id. (emphasis added). Section 851 of Title 21 provides, in pertinent part, that

> [n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in

- 39 -

writing the previous convictions to be relied upon. Id. § 851(a)(1). As indicated in Parts I.A. and I.B.3. above, the government filed a § 851 Information against Raymond Fox prior to the entry of his plea of guilty; and after accepting that plea, the district court imposed on him the statutory minimum prison term of 20 years.

Raymond challenges the constitutionality of § 851 and of its application to him. He contends that in allowing a United States Attorney, in his sole discretion, to file an information that substantially raises the minimum mandatory term of imprisonment to which a defendant is exposed, § 851 impermissibly transfers power over sentencing from the Judicial Branch to the Executive Branch. In any event, he contends that the government, in filing a § 851 Information only against him and not against any of his codefendants without any explanation, violated his right to due process. Neither contention has merit.

### 1. The Alleged Transfer of Power

> Historically, federal sentencing--the function of determining the scope and extent of punishment-- never has been thought to be assigned by the Constitution to the exclusive jurisdiction of any one of the three Branches of Government.

Mistretta, 488 U.S. at 364. It "long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch." Id. at 390; see also United States v. Huerta, 878 F.2d 89,

91 (2d Cir. 1989), cert. denied, 493 U.S. 1046 (1990).

"It is well established that the decision as to what federal charges to bring against any given suspect is within the province of the Executive Branch of the government." United States v. Bonnet-Grullon, 212 F.3d 692, 701 (2d Cir.), cert. denied, 531 U.S. 911 (2000).

> The Attorney General and United States Attorneys retain "'broad discretion'" to enforce the Nation's criminal laws. Wayte v. United States, 470 U.S. 598, 607 (1985) (quoting United States v. Goodwin, 457 U.S. 368, 380, n. 11 (1982)). They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." U.S. Const., Art. II, § 3; see 28 U.S.C. §§ 516, 547.

United States v. Armstrong, 517 U.S. 456, 464 (1996). The Executive Branch thus has the exclusive authority not only to decide whether to prosecute, but also to decide which of alternative statutory sections, which may carry penalties of varying severity, the defendant will be charged with violating. See, e.g., United States v. Bonnet-Grullon, 212 F.3d at 701; United States v. Huerta, 878 F.2d at 92.

Section 851 is a provision that requires, if the United States Attorney intends to seek enhanced penalties based on the defendant's prior criminal record, that prior to the start of trial or the entry of a plea of guilty, the defendant be given notice of that intent. The fact that it is the prosecutor who decides whether to give such notice is simply a facet of the above prosecutorial

- 41 -

authority:

> Insofar as prosecutors, as a practical matter, may be able to determine whether a particular defendant will be subject to the enhanced statutory maximum, any such discretion would be similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors. See United States v. Armstrong, 517 U.S. 456, 464-465 (1996); Wayte v. United States, 470 U.S. 598, 607 (1985). Any disparity in the maximum statutory penalties between defendants who do and those who do not receive the notice is a foreseeable--but hardly improper--consequence of the statutory notice requirement.

LaBonte, 520 U.S. at 762. Although this discretion gives prosecutors some degree of control over a defendant's ultimate sentence, it does not violate the principle of separation of powers.

### 2. The Alleged Violation of Due Process

Raymond also contends that the government's filing of the § 851 Information against him violated his right to due process because the government gave no explanation for filing such an information against him but against none of his codefendants. Given that Raymond has offered no basis for suspecting that the government had any improper motive, we reject this argument as well.

Prosecutorial discretion "is, of course, subject to constitutional constraints," United States v. Batchelder, 442 U.S. 114, 125 (1979); the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other

- 42 -

arbitrary classification," Oyler v. Boles, 368 U.S. 448, 456 (1962); see also Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886).  However, because the United States Attorneys are charged with taking care that the laws are faithfully executed, there is a "presumption of regularity support[ing] their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."  Armstrong, 517 U.S. at 464 (internal quotation marks omitted); see also Oyler, 368 U.S. at 456 (Mere "conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.").

Generalized allegations of improper motive do not disturb the presumption of regularity.  To warrant discovery into the government's reasons for pressing a charge against one person rather than another, a defendant must present at least "some evidence" to show not only that he was singled out but also that he was singled out for reasons that are "invidious or in bad faith." United States v. Berrios, 501 F.2d 1207, 1211 (2d Cir. 1974) (internal quotation marks omitted); cf. Wade v. United States, 504 U.S. 181, 186 (1992) ("generalized allegations of improper motive" for government's failure to move for a downward departure rewarding a defendant's substantial assistance to the government do not entitle a defendant to a remedy, discovery, or an evidentiary hearing).

In the present case, Raymond has made no allegations of impropriety.  He simply complains that the government gave no explanation for filing the § 851 Information against him.  Given the

- 43 -

presumption of regularity and the absence of any proffer by Raymond as to a motive that might have been improper, no explanation by the government was required.

E.  Clerical Corrections to Three of the Judgments

Finally, we note that the written judgments against Sanchez, Keys, and Daryl Fox, all dated July 5, 2005, are not wholly accurate in reflecting those defendants' offenses of conviction. With respect to Sanchez, whose plea of guilty was limited (and accepted as limited) to so much of counts one and two as alleged trafficking in cocaine but not in cocaine base, the judgment misdescribes his offense of conviction on count one as "Conspiracy to Distribute and Possess with Intent to Distribute and [sic] Cocaine Base."  As to Keys and Daryl Fox, whose pleas of guilty did not exclude cocaine base (indeed, at the sentencing stage, Daryl stated that he "wanted to get the crack cocaine stricken from [his plea of guilty]"), the judgments describe their offenses of conviction on count two as "Distribution and Possession with Intent to Distribute Cocaine," but omit mention of cocaine base.  Amended judgments should be entered in the district court, correctly identifying the offenses of conviction.

CONCLUSION

For the reasons stated above, and subject to the required

- 44 -

clerical corrections noted above, the appeal of Daryl Fox is dismissed pursuant to Anders v. California; the Sanchez and Keys matters are remanded to the district court for clarification, and, if necessary, for further proceedings; and the judgment against Raymond Fox is affirmed.

Following the proceedings described in Part II.C.3. of this opinion and the entry of final decisions by the district court, the jurisdiction of this Court to consider a subsequent appeal may be invoked by any affected party by notification to the Clerk within 10 days of the pertinent final decision, see United States v. Jacobson, 15 F.3d 19 (2d Cir. 1994), in which event the renewed appeal will be assigned to this panel.