UNITED STATES of America, Appellee,

v.

Oswald THORPE, Defendant–Appellant.

Docket No. 98–1670.

United States Court of Appeals, Second Circuit.

Argued April 23, 1999.

Decided Sept. 8, 1999.

**340**

Kevin S. Reed, Assistant United States Attorney (Lewis J. Liman of counsel; Mary Jo White, United States Attorney for the Southern District of New York), New York, New York, for Appellee.

Barry D. Leiwant, The Legal Aid Society Federal Defender Division Appeals Bureau, New York, New York, for Defendant–Appellant.

Before: KEARSE and CALABRESI, Circuit Judges, and HAIGHT, Senior District Judge.*

HAIGHT, Senior District Judge:

Oswald Thorpe appeals from a sentence imposed upon him on November 19, 1998 by the United States District Court for the Southern District of New York (Richard Conway Casey, *Judge* ).

On August 20, 1998, Thorpe pled guilty before District Judge Sonia Sotomayor (as she then was) to the sole count of an indictment charging him with bank larceny in violation of 18 U.S.C. § 2113(b) (1996). When Judge Sotomayor became a member of this Court, the case was reassigned to Judge Casey for sentencing.

We vacate and remand for resentencing because the district judge's remarks at sentencing make it unclear whether he fully appreciated the applicable sentencing options.

## I. BACKGROUND

On August 20, 1998 appellant Oswald Thorpe pled guilty to the sole count in indictment 98 Cr. 641, which charged him with bank larceny in violation of 18 U.S.C. § 2113(b).[1]

---

* The Honorable Charles S. Haight, Jr. of the United States District Court for the Southern District of New York, sitting by designation.

**1.** § 2113(b) provides:
Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceed-ing $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both; . . .

As established by his allocution before Judge Sotomayor and the Probation Department's subsequently filed Presentence Report ("PSR"), Thorpe's indictment arose out of his theft in October 1997 of $18,000 from his then-employer, the Marine Midland Bank ("MMB").

Specifically, at that time Thorpe held the position of head teller at the 437 Madison Avenue Branch of MMB. When MMB announced its plan to close the branch effective October 31, 1997, Thorpe asked to be transferred to a branch in the Bronx, where he lived. MMB rejected Thorpe's request and assigned him instead to a branch in Manhattan. Thorpe expressed his dissatisfaction to MMB Management, but to no avail.

On or about October 27, 1997, Thorpe obtained a blank MMB certified bank check, forged the required signature of an MMB officer, wrote the check for $18,000, and deposited $9,000 into each of two MMB customer accounts. The following day, Thorpe withdrew the $18,000 from those customer accounts and converted the funds to his own use. On October 29, 1997, Thorpe called in sick to work. He never reported back to MMB and obtained new employment at another financial services institution.

The Probation Office included in its PSR a calculation of the applicable sentencing range pursuant to the United States Sentencing Guidelines ("U.S.S.G."), to which neither Thorpe nor the government objected. Specifically, the PSR calculated Thorpe's offense level at 7 and his criminal history category at I. Those calculations placed Thorpe within Zone A of the U.S.S.G. Sentencing Table, with a resulting sentencing guidelines range of 0–6 months. The PSR went on to recite that a term of two to three years of supervised release could be imposed in addition to any term of imprisonment; that Thorpe was eligible for a term of probation of one to five years; and that the district court should make an order of restitution of $18,000 payable to MMB.

■ In these circumstances, U.S.S.G. § 5B1.1 authorized a sentence of probation; and, since the applicable guideline range was in Zone A of the Sentencing Table, the district court was not required to impose any condition of confinement or home detention.[2]

The Zone A sentencing range applicable to Thorpe also authorized, at the highest end of the range, a term of imprisonment of six months. However, the Probation Office in its PSR specifically recommended against sending Thorpe to prison. The Probation Office reasoned that "a sentence of three years' probation rather than imprisonment would better serve the defendant and the victim in this case as it would allow adequate time for the defendant to obtain employment so that he may satisfy restitution payments and redress the affects [sic] of his criminal actions." PSR at 15. The PSR further observed:

[T]o the defendant's credit, he has been cooperative throughout the presentence process and has expressed remorse for his actions. Prior to the instant offense, the defendant appears to have been a law-abiding citizen. He maintains an extensive employment history and has a sufficient educational background. It is difficult to understand why the defendant risked his career and working relationships to commit this one criminal act. It appears that the defendant's lack of judgment has cost him his job

Violations of § 2113(b) do not involve the use of force or violence. Such elements are included in other subsections of § 2113, which impose more severe penalties.

**2.** Had the calculations in Thorpe's case placed him within Zone B of the Sentencing Table, which requires some period of imprisonment for all calculations of offense levels and criminal history categories falling within its boundaries, a sentence of probation would be authorized only if "the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention ...". U.S.S.G. § 5B1.1(a)(2).

and will most likely hinder his ability to acquire future employment in the field of banking.

PSR at 14.

Thorpe appeared for sentencing before Judge Casey on November 19, 1998. Not surprisingly, defense counsel endorsed the recommendation of the Probation Department as expressed in the PSR. Counsel stated: "I would urge the Court for a number of reasons to adopt the recommendation of the Probation Department. They have recommended that your Honor consider a sentence of three years of probation with a full payment of restitution." Tr. 7. Counsel went on to state in some detail her reasons for urging a probationary sentence. Tr. 7–10. For its part, the government reiterated its contention, previously made in a letter, that Thorpe should receive a two-level enhancement for abuse of trust under U.S.S.G. § 3B1.3, a contention that the district judge rejected.

The district judge then proceeded to impose sentence. What follows constitutes the entirety of the judge's remarks relevant to this appeal:

> The Court adopts the factual recitation in the presentence report. I also adopt the guideline offense level of 7 and criminal history level of I as set forth in the report. I am not granting a departure. Although I have the authority, it is not warranted. I will now state the sentence I intend to impose.
>
> Mr. Thorpe, it is the judgment of this Court that you be sentenced to a term of imprisonment for six months to be followed by a term of three years supervised release. I am not imposing a fine. I am imposing a mandatory special assessment of $100 which shall be due immediately.

Tr. 10. The district judge then dealt with restitution and the terms of Thorpe's supervised release, in manners that are not germane to this appeal. Tr. 10–11.

■ Thorpe argues on appeal that the most reasonable interpretation to be placed upon the district judge's remarks is that the judge believed the sentencing guidelines required a downward departure before he could impose a non-custodial sentence of probation. We agree. If the words the judge chose do not reflect that belief, it is difficult to understand what meaning they were intended to convey. But that interpretation of the district judge's remarks reveals an error of law, since, as noted, the guidelines authorized a probationary sentence for Thorpe without the necessity of a downward departure. It follows that the sentencing rationale articulated by the district judge is erroneous at worst and ambiguous at best. In either case, for the reasons that follow we are required to remand the case for resentencing.

## II. DISCUSSION

■ While in most sentencing appeals "a reviewing court is entitled to assume that the sentencing judge understood all the available sentencing options," it sometimes occurs that "the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available option." *United States v. Rivers*, 50 F.3d 1126, 1131–32 (2d Cir.1995). In such a circumstance, this Court "deem[s] it prudent to remand for clarification." *Id.* at 1132. If the district court in this case believed that it had to make a downward departure under the Sentencing Guidelines in order to place Thorpe on probation, it was wrong in law; and "[w]hen the record is ambiguous as to whether a district court has allowed a mistake of law to affect its sentencing decision, we have regularly remanded to allow the court to reconsider its decision in light of our correction of the mistake." *United States v. Montez–Gaviria*, 163 F.3d 697, 703 (2d Cir.1998).

Not infrequently, such remands occur when the district court's sentencing remarks indicate a mistaken belief that it lacked the power to make a downward departure. *See, e.g., United States v. Ekhator*, 17 F.3d 53, 55 (2d Cir.1994) ("If in

declining to depart the district court stated a belief that it had no power to depart, and if that belief was erroneous, we vacate the sentence and remand for further proceedings within the proper legal framework. Further, if we are unable to discern whether the district court's refusal to depart resulted from the exercise of its discretion or instead from a perceived, but mistaken, lack of authority, we remand to the district court for resentencing.") (citations omitted); *United States v. Ogbondah*, 16 F.3d 498, 501 (2d Cir.1994) ("We next consider whether the district court understood its authority to depart downward on this ground. If the record is ambiguous, as it is here, we must remand to the district court to determine whether it understood the full scope of its authority.") (citation omitted).

While in the case now before us the district court's sentencing remarks referred to a downward departure, the ambiguity is not of the particular sort presented by cases like *Ekhator* and *Ogbondah*. "I am not granting a departure," Judge Casey said in sentencing Thorpe. "Although I have the authority, it is not warranted." He thereupon sentenced Thorpe to six months' imprisonment.

These remarks do not suggest that Judge Casey, as was the case in *Ekhator* and *Ogbondah*, may have incorrectly believed he lacked the power to downwardly depart and impose a more lenient sentence, such as probation. But they do suggest that Judge Casey may have believed he needed to downwardly depart in order to sentence Thorpe to probation. That belief, if held by the district judge, was wrong in law, since the Guidelines authorized for Thorpe, a Zone A defendant, a sentence of probation without the intercessory grace of a downward departure.[3] There is no difference in principle between these two possible failures of un-

derstanding. Each requires a remand for resentencing to achieve two important purposes: sentencing by the district court, in the sure and certain understanding of the legal principles that governed its options; and consideration of that sentence by the court of appeals, in the sure and certain knowledge of what the district court did and why.

At the conclusion of oral argument, and in an effort to obtain further enlightenment as to what the district court might have had in mind by its reference to a downward departure, we instructed counsel to address by letter whether a downward departure had any practical office to perform in a Zone A case, where imprisonment need not be imposed, a probationary sentence is authorized, and the period of probation must be at least one year but cannot exceed five years. *See* U.S.S.G. § 5B1.2(a)(1) (the period of probation shall be "at least one year but not more than five years if the offense level is 6 or greater"); 18 U.S.C. § 3561(c)(1) (1990) (the authorized term of probation is "for a felony, not less than one nor more than five years"). Defense counsel responded that, in view of these limitations, the district court had no power to depart below a one-year period of probation: the thrust of counsel's response is that the district court's reference to a downward departure reflected the court's misunderstanding of its sentencing options. The government's letter offered the imaginative suggestion that the district court could have sentenced Thorpe to a term of supervision of less than one year by sentencing him to one day's imprisonment and then departed to impose a term of *supervised release* (instead of *probation*) of less than one year.

While we appreciate counsel's efforts, the district judge's relatively terse comments at sentencing make it impossible to

---

**3.** The district court may have formed the impression, from the fervent arguments of defense counsel in support of the PSR's recommended sentence of probation, that a

downward departure was necessary to achieve it. That would be a case of counsel's eloquence having unintended (and erroneous) consequences.

tell whether these or comparable thoughts occurred to him at the time. Nor did the judge explain why he rejected the recommendation of the Probation Department in the PSR, seconded by defense counsel, that Thorpe be placed on probation, and not incarcerated. Accordingly we end where we began, confronting an ambiguity created by the district judge's remarks as to whether he correctly understood the available sentencing options. In that circumstance, there must be a remand for resentencing.

We reiterate, as we had occasion to say in *Rivers*, that "[b]y remanding to afford the District Judge an opportunity to clarify the bases of his sentencing decisions, we intend no disrespect to the able and conscientious District Judge." 50 F.3d at 1132. Here, as in *Rivers* and other comparable cases, "[w]e simply decline to take the risk that the sentencing judge did not fully appreciate his options," *id.*, a particularly important safeguard when what is really at risk is an individual's liberty. On remand, the district court will be in a position to choose between all available sentencing options as it thinks fit, and state with clarity the reasons for the option it chooses.

Vacated and remanded for resentencing consistent with this opinion.

So Ordered.