09-2580-cr
USA v. Preacely

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: May 28, 2010)                                    Decided: December 21, 2010)

Docket No. 09-2580-cr

- - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

Appellee,

- v.-

JAMAR PREACELY,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - -

Before:  RAGGI, LYNCH, and WALLACE, Circuit Judges.[1]


Jamar Preacely appeals from his sentence, which was entered on May 1, 2009 in the

United States District Court for the Eastern District of New York by District Judge Thomas C.

Platt, Jr.  The district court had jurisdiction over this case pursuant to 18 U.S.C. § 3231, and we

have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.  For reasons that follow,

we vacate the sentence and remand the case for resentencing.

Judge Lynch concurs in a separate opinion.

Judge Raggi dissents in a separate opinion.

---

[1] The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Yuanchung Lee, Federal Defenders of New York, Inc., New York, New York, for Appellant.

Thomas M. Sullivan, Assistant United States Attorney, of counsel (Susan Corkery, Assistant United States Attorneys, of counsel, on brief), for Benton J. Campbell, United States Attorney, Eastern District of New York, Brooklyn, New York, for Appellee.

J. CLIFFORD WALLACE, Circuit Judge:

**I.**

On October 8, 2003, law enforcement personnel conducted surveillance of Preacely's apartment, based on a tip that he was selling crack cocaine. Preacely and another man were seen leaving the apartment. Law enforcement officers attempted to question them and both fled. Preacely escaped, but the officers caught the other man and found he possessed crack cocaine. The other man told the officers that Preacely was selling crack cocaine. A search of Preacely's apartment revealed more crack cocaine (about seven grams). A warrant was issued for Preacely's arrest. Preacely was subsequently arrested, at which time police found 14.4 grams of crack cocaine and 1.32 grams of marijuana on his person. He was indicted for distributing and possessing with intent to distribute 50 grams or more of a substance containing cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(iii).

Pursuant to a cooperation agreement, Preacely pled guilty to distribution and possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. § 841(b)(1)(B)(iii), a crime which carries a mandatory minimum sentence of five years. However, federal law provides that, upon motion by the government, a court may impose a sentence below

the statutory minimum "to reflect a defendant's substantial assistance" in investigating or prosecuting other criminals. 18 U.S.C. § 3553(e); *see also* U.S.S.G. § 5K1.1 (permitting court to depart from Sentencing Guidelines upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another criminal). In the cooperation agreement here, the government agreed to file a motion pursuant to U.S.S.G. § 5K1.1 if Preacely provided substantial assistance to law enforcement, cooperated fully, and complied with the agreement's terms. The government ultimately submitted a motion pursuant to the cooperation agreement, meaning that the sentencing court could consider imposing a sentence below the statutory minimum.

## II.

Preacely's Pre-Sentencing Report (PSR) indicates that his childhood was marred by poverty and substance abuse. He grew up in a "ramshackle" home with an alcoholic stepfather who verbally and physically abused his mother and threatened her with a gun "on a daily basis." His mother was addicted to crack cocaine during some of Preacely's teen years. Preacely became a heavy user of marijuana, starting at the age of 12 and abusing that drug continuously for most of his adult life.

Preacely was convicted of several crimes before his arrest in this case. At age 16, he was convicted of attempted criminal possession of a controlled substance (fifth degree). He was sentenced to a term of six months in custody and five years probation. Later that same year, however, he was arrested for possessing crack cocaine and convicted of criminal possession of a controlled substance (seventh degree). For this additional conviction, and the violation of his earlier probation, he was sentenced to an additional eight months in custody. At age 18, Preacely

3

was convicted of disorderly conduct and sentenced to time served. Later that year, he was again convicted of felony criminal sale of a controlled substance (fifth degree) and sentenced to a term of one year's imprisonment. At age 21, he was convicted of misdemeanor assault, resulting in another one year sentence. At age 22, he was arrested for selling crack cocaine and yet again convicted for criminal sale of a controlled substance (fifth degree). For this conviction, he was sentenced to two to four years, and later paroled.

In the case before us, Preacely was arrested in June 2004. He was 27 at the time. He was incarcerated from the time of his arrest until June 6, 2006, at which time he was released on bail. He remained free on bail through his sentencing in May 2009.

Between arrest and sentencing, a period of approximately five years, Preacely underwent exceptional rehabilitation. First, Preacely worked to overcome his drug addiction. The PSR reflected that Preacely had abused marijuana for years, but had not used drugs since his arrest and wanted to be placed in a substance abuse program while in prison. After being released on bail, Preacely was required to report to the Pretrial Services Agency once a week and to submit to random drug testing. It is undisputed that, in the nearly three years between his June 2006 release and May 2009 sentencing, Preacely never failed a drug test and was "completely compliant" with all of the terms of his release.

Second, Preacely rendered significant assistance to the government. He was released "with the consent of the government . . . so that he could purchase narcotics from specific targets and otherwise assist in investigations of drug dealers and others." The government confirmed, by letter to the district court, that Preacely had "actively contributed to several successful criminal investigations." The government's section 5K1.1 motion also stated that Preacely began

4

cooperating "very shortly after his arrest," and provided "truthful and consistent information." This information, according to the government, assisted in the arrest and/or conviction of persons suspected of drug dealing, firearms trafficking, credit card fraud, and multiple robberies, assisted in solving two murder cases, and assisted in the apprehension of a fugitive.

Third, Preacely transformed his professional life. Preacely had dropped out of school in ninth grade. Despite having received his GED in 2000, he had been employed only sporadically during his adult life. After his release on bail in June 2006, Preacely pursued employment and was one of the 18 (out of 90) candidates accepted into a competitive workforce development program sponsored by the county district attorney. The director of the program praised Preacely's performance, observing that he completed all homework assignments, often took the lead in class discussions, and displayed genuine interest in the subject of the program. She stated that Preacely was "quick to grasp complex and difficult subject matter," "willing to assist others," and possessed the character traits that were valued in the classes and in the work environments for which he was preparing. Another district attorney, who was affiliated with the program, praised Preacely's perfect attendance, "initiative and focus," and "leadership ability and clear thinking." She indicated that Preacely had begun additional training with a local union on his own initiative, and it was anticipated that this would lead to full-time employment. Preacely completed the workforce development program and the union training program in November 2008. That same month, his employer wrote to the court, stating that Preacely was "one of [his] most trusted and dependable employee[s]."

Fourth, and finally, Preacely dramatically transformed his personal life. Preacely's employer stated that he had "grown into a responsible man, husband and father." Preacely not

5

only attended voluntary counseling, but also counseled others through community programs. He worked with an initiative to close the drug market in his community. The Nassau County District Attorney also selected him to become a youth advisor for a gang prevention program. An addendum to the PSR reflected that Preacely married his longtime girlfriend and was providing support and care for their young daughter.

**III.**

At sentencing, the district judge accepted the PSR's recommendations as to Preacely's offense level and criminal history category for purposes of the Sentencing Guidelines. As to Preacely's criminal history category, the PSR assigned points for prior criminal history as follows: no points for the 1993 convictions, two points for 1995 disorderly conduct conviction, two points for the 1995 controlled substance conviction, two points for the 1995 assault conviction, and three points for the 1999 drug conviction. The PSR added another three points because the crime in this case occurred less than two years after Preacely's release from prison and while on parole for a prior offense, pursuant to U.S.S.G. § 4A1.1(d)-(e). This resulted in a total of twelve criminal history points, placing Preacely in criminal history Category V. However, because Preacely was over age 18 at the time of the current offense and had two prior felony convictions for controlled substance offenses, the PSR proposed that he qualified as a career offender under U.S.S.G. § 4B1.1(b). As a career offender, Preacely would be placed in criminal history Category VI.

The PSR calculated Preacely's base offense level as 26, under U.S.S.G. § 2D1.1(c)(6). By application of the Career Offender Guideline, however, his base offense level was elevated to 34. U.S.S.G. § 4B1.1(b)(B). The base offense level was reduced by three points for acceptance of

6

responsibility under U.S.S.G. § 3E1.1, resulting in a final offense level of 31. With an offense level of 31 and a criminal history of Category VI, the Sentencing Guidelines suggested a range of 188-235 months' imprisonment.

At Preacely's sentencing hearing, his attorney asked the district judge to impose a term of two years' imprisonment – the time he had already served – and six months of "community confinement" in a halfway house. Preacely's counsel argued that the Career Offender Guideline overstated Preacely's criminal history and the likelihood he would recidivate, resulting in a sentence far longer than necessary to serve the policies of the federal sentencing scheme. She also urged that "respect for the justice system would be enhanced" by a sentence that recognized Preacely's rehabilitation and cooperation with authorities. Preacely spoke at his sentencing and thanked the prosecutor for "giving me a chance, the chance to improve myself." He stated that he "tried very hard to do things in every way [other] than what I did in the past," and that he was "thankful that I was able to do that and change my life around."

For its part, the government did not recommend a specific sentence, but submitted two documents prior to the sentencing hearing: a section 5K1.1 motion outlining the cooperation Preacely had provided, and a letter explaining that Preacely had been "completely compliant" with the terms of his 2006 release. At the sentencing hearing, the Assistant U.S. Attorney stated that Preacely's cooperation was "extensive," and that he had taken "his own initiative to better his life, which was certainly not . . . required under the cooperation agreement" and "should be commended." She said that the case agent who worked with Preacely "felt very strongly that Mr. Preacely really is someone that he has seen turn his life around." She also stated her own

7

opinion, that "I think he has shown that he does want to endeavor to be on the right path in the future."

The district judge adopted the PSR's recommendation to place Preacely in Criminal History Category VI and its calculation of an offense level of 31. Observing that the Guidelines recommended a sentence in the range of 188 to 235 months' imprisonment, the district judge settled on a term of 94 months' imprisonment, five years of post-release supervision, and a $100 special assessment. This term of imprisonment was exactly half of the low end of the range recommended by the Guidelines. The district judge gave Preacely credit for time served (approximately two years).

**IV.**

In sentencing Preacely, the district court was required to consider the factors set forth in section 3553(a) of the Sentencing Reform Act:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes of the defendant; and
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

We review a sentence "under a deferential abuse of discretion standard." *United States v. Hernandez*, 604 F.3d 48, 52 (2d Cir. 2010); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (review for "unreasonableness" amounts to review for abuse of discretion); *United States v. Booker*, 543 U.S. 220, 261 (2005) (review of a sentence is for "unreasonableness"). Appellate review of a sentence has two components: procedural review and substantive review. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc).

We must first determine whether the district court complied with the procedural requirements of the Sentencing Reform Act. *Id.* at 189-90; 18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.* The district court should ordinarily "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," *Gall*, 552 U.S. at 49, and then consider the factors listed in 18 U.S.C. § 3553(a). A district court commits procedural error, among other things, by failing to calculate the Guidelines range or by making a mistake in its Guidelines calculation; by treating the Guidelines as mandatory; by failing to consider the section 3553(a) factors; or by resting its sentence on a clearly erroneous finding of fact. *Cavera*, 550 F.3d at 190. "Moreover, a district court errs if it fails adequately to explain its chosen sentence, and must include an explanation for any deviation from the Guidelines range." *Id.* (internal citations and quotation marks omitted); *see also Rita v. United States*, 551 U.S. 338, 339 (2007).

As a matter of substantive review, we may not substitute our own judgment on what is sufficient to meet the section 3553(a) considerations in a particular case. *Hernandez*, 604 F.3d at 53.

> We will instead set aside a district court's *substantive* determination only in
> exceptional cases where the trial court's decision cannot be located within the
> range of permissible decisions . . . . This degree of deference is only warranted,

however, once we are satisfied that the district court complied with the Sentencing Reform Act's *procedural* requirements, and this requires that we be confident that the sentence resulted from the district court's considered judgment as to what was necessary to address the various, often conflicting, purposes of sentencing.

*Id*. (internal quotation marks omitted), *quoting Cavera*, 550 F.3d at 189-90. We do not presume that a Guidelines range sentence is reasonable. *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006). Instead, we "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts." *Cavera*, 550 F.3d at 190, *citing Rita*, 551 U.S. at 353.

This case requires an understanding of the proper role of the Career Offender Guideline. Following *Gall*, 552 U.S. 38, and *Kimbrough v. United States*, 552 U.S. 85 (2007), we have held that it is "emphatically clear that the Guidelines are guidelines – that is, they are truly advisory." *Cavera*, 550 F.3d at 189. While the Guidelines are "truly advisory," district courts are not free to ignore them "or to treat them merely as a body of casual advice." *Id.* (internal quotations omitted). The Sentencing "Guidelines provide the starting point and the initial benchmark for sentencing, . . . and district courts must remain cognizant of them throughout the sentencing process." *Id.* (internal citations and quotation marks omitted).

Of relevance here, a district court may impose a sentence outside the range called for by the Career Offender Guideline. *United States v. Sanchez*, 517 F.3d 651, 664-65 (2d Cir. 2008). The district courts are not, however, free to ignore the Career Offender Guideline. The statute directing the Sentencing Commission to promulgate the Career Offender Guideline, 28 U.S.C. § 994(h), "reflects Congress's policy judgment that violent felonies and drug trafficking felonies generally warrant more severe sentences when committed by recidivists than when committed by

10

first- or second-time offenders." *Sanchez*, 517 F.3d at 668. As such, district courts should "take Congress's views on repeat offenders into account in determining the appropriate sentence in light of" the section 3553(a) factors. *Id*. at 665.

Preacely argues that the district judge gave inappropriate and overriding weight to the Career Offender Guideline. He submits that, although the district judge sentenced him below the Guidelines range, we cannot be sure that the judge understood that he could decline to treat Preacely as a career offender.

## A.

The sentencing judge confirmed that he had read three letters from the defense and two letters from the government regarding Preacely's sentencing. He listened to presentations by defense counsel, the defendant, and the government. He stated that he had taken into account all of the section 3553(a) factors and had "been over this record substantially." The district judge observed "there is no question that [Preacely] has done a lot to improve his situation." The judge stated, however:

> I may not overlook the offense which we're dealing with, or the offenses we're dealing with here. . . . He is in a Category VI, which is a career offender category based on his prior record. And that puts him in the 188 to 235 months schedule under the guidelines. And I certainly commend him for his cooperation efforts, and the details that you have set forth in your plea for him. But I am dealing with a Category VI career offender, regardless of all of what you said. I don't think I can – I'll give him credit for time served, but I don't think I can give him any less than 94 months in toto. . . . I'm here not only to protect the interests of your client, but I have to protect the interests of the public. . . . The minimum guideline is 188 months to 235 months. I'm cutting the guideline range in half to 94 months . . . . I have cut the guideline range from a Category VI. That is the highest. . . . It is the highest category for prior offenders. His record calls for that. And his record, unfortunately for you, calls for that sentence as I view it.

11

Our concern is the sentencing judge's repeated emphasis on Preacely's status as a Category VI career offender. We may generally assume "that the sentencing judge understood all the available sentencing options, including whatever departure authority existed in the circumstances of the case." *Id.* at 665 (internal quotation marks omitted). However, we remain wary of making this assumption "where the judge's sentencing remarks create ambiguity as to whether the judge correctly understood an available sentencing option, and we are more inclined, in the face of such ambiguity, to remand for clarification." *Id.* (internal quotation marks, citations and alterations omitted). The question before us is whether this case reveals such an ambiguity.

**B.**

Here, it is unclear whether the sentencing judge understood that he could make a so-called "horizontal departure" from the Career Offender Guideline and adopt a lower criminal history category. *See, e.g.*, *United States v. Mishoe*, 241 F.3d 214, 218-19 (2d Cir. 2001) ("horizontal" departure from the Guideline criminal history category may be "based on an individualized consideration" of whether that Guideline "'significantly over-represents the seriousness of [defendant's] criminal history [and/]or the likelihood that [he] will commit further crimes'", *quoting* U.S.S.G. § 4A1.3(b)(1)). For example, the district judge could have placed Preacely in criminal history Category V, as indicated by the PSR's calculation of his criminal history points. As calculated in the PSR, departure from the Career Offender Guideline would result in an offense level of 23. Using criminal history Category V and an offense level of 23 would yield an advisory Guidelines sentencing range of 84 to 105 months' imprisonment.

The government correctly observes that the district judge understood that he could depart downward from the Sentencing Guidelines. The district court deviated from the advisory range

12

by more than seven years, cutting the low-term of 188 months in half. Moreover, in discussing the government's motion pursuant to U.S.S.G. § 5K1.1, the district court stated that he had the authority to sentence Preacely to no imprisonment at all. Viewed in context, however, these comments show only that the judge understood his authority to depart from the statutory minimum pursuant to the government's 5K1.1 motion. The district court ultimately concluded, it appears, that Preacely's cooperation did not warrant *no* term of imprisonment but that Preacely's cooperation warranted a sentencing reduction calculated by reference to the low end of the applicable Guidelines range. This is reinforced by the written statement attached to the judgment of conviction, in which the district court said that the sentence was "below the guidelines range based on a 5K1.1 motion filed by the Government."

It is not clear that the district judge comprehended his authority to depart from the Career Offender Guideline, and therefore Preacely's criminal history category, in calculating the advisory sentencing range under the Guidelines. Indeed, Preacely's attorney sought to remind the sentencing judge that he could depart from the Career Offender Guideline if criminal history Category VI over-represented the seriousness of Preacely's criminal history and/or his likelihood of recidivism. The judge replied:

> I may not ignore his prior record. I may not ignore the guidelines. I'm cutting the guidelines in half, the minimum guideline for this offense in half. You look at the pages, upon pages of record here, and the category which is the highest category you can get. . . . I have given a lot of thought to this sentence. I realize what you – I understand what you said. But you're asking me to depart from a sixth degree offender. . . . He is a career offender in the federal system. . . . I didn't put him there. He put himself in that category.

It is ambiguous whether the sentencing judge understood that he was not required to treat Preacely as a "sixth degree offender" and that the Career Offender Guideline was not mandatory.

13

In this case, evidence of rehabilitation was particularly relevant to determining whether the Career Offender Guideline was appropriate. There was compelling evidence that Preacely embarked on a three-year course of rehabilitation, showing both his desire and his potential to live a productive life. By the government's own admission, he went above and beyond the conditions of his release. The district court was required, as a procedural matter, to consider the evidence of Preacely's rehabilitation. *See, e.g., Hernandez*, 604 F.3d at 53-55 (holding that a sentencing judge procedurally erred during resentencing where he failed to consider evidence of the defendant's rehabilitation in the intervening years since the first sentencing). The sentencing judge acknowledged Preacely's efforts "to improve his situation," yet emphasized Preacely's categorization as a career offender: "I am dealing with a Category VI career offender, regardless of all of what you said." The district judge's statement, in light of the evidence of Preacely's rehabilitation, reinforces our doubt that the district judge fully understood his authority to depart from Category VI if it "significantly over-represent[ed] the seriousness of [Preacely's] criminal history [and/]or the likelihood that [he] will commit further crimes." *Mishoe*, 241 F.3d at 218-19; U.S.S.G. § 4A1.3(b)(1). The record is at least ambiguous as to whether the sentencing judge believed the Career Offender Guideline was mandatory.

As stated in *Sanchez*, we would probably not remand "if the record indicated clearly that the district court would have imposed the same sentence had it had an accurate understanding of its authority." 517 F.3d at 665. But that is not the case here. The district judge selected a sentence of 94 months by taking the advisory range of 188 to 235 months (calculated in reliance on the Career Offender Guideline), and cutting the low term of that range in half. If the district court had adopted criminal history Category V and an offense level of 23, a Guidelines range of 84 to 105 months would result. If the district court applied the same methodology to this sentencing range, and halved the low-term advisory sentence of 84 months, a sentence of only 42 months would result. We do not suggest that is the proper sentence here. We provide this example to illustrate that it is not clear that the district judge would have reached the same sentence had he understood that he could depart from the Career Offender Guideline.

We offer no opinion as to whether the record in this case supports or requires a departure from the Career Offender Guideline. Instead, we remand so that the district court can consider that option, "based on an individualized consideration of factors relevant to an assessment of whether [Category] VI 'significantly over-represents the seriousness of [his] criminal history [and/]or the likelihood that [he] will commit further crimes.'" *Mishoe*, 241 F.3d at 218-19, *quoting* U.S.S.G. § 4A1.3(b)(1).[2]

---

[2] The dissent states that we err by remanding for resentencing instead of remanding to ask the district court to clarify its understanding of its sentencing authority. While the dissent is correct that in *Sanchez* we remanded for clarification, we do not read *Sanchez* to *require* such a remand. 517 F.3d at 669 ("On remand, the district court's first step should be to provide the necessary clarifications"). In our reading, it is far from clear that *Sanchez* overturns a long line of cases holding that remanding for resentencing may be appropriate where the district court's sentencing statements are ambiguous. *See, e.g., United States v. Toohey*, 448 F.3d 542, 546 (2d Cir. 2006)

15

# V.

The federal sentencing statute directs a court to impose "a sentence sufficient, but not greater than necessary, to comply with" the purposes outlined in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Even where a district court has not procedurally erred, we may reverse a sentence if it is substantively unreasonable in light of these purposes. *See United States v. Rigas*, 583 F.3d 108, 121-23 (2d Cir. 2009). To do so, we need not conclude "that 'no reasonable person' would have imposed" the sentence at issue. *Id.* at 123 n.5. Rather, we can "provide a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id.* at 123.

---

("remand is warranted" in face of ambiguous statement by district judge); *United States v. Thorpe*, 191 F.3d 339, 344 (2d Cir. 1999) ("[W]e end where we began, confronting an ambiguity created by the district judge's remarks as to whether he correctly understood the available sentencing options. In that circumstance, there must be a remand for resentencing"). Given the district judge's remarks regarding "cutting the guidelines in half," we believe resentencing is prudent.

Furthermore, the government did not make the argument that is advocated here by the dissent. While we are free to entertain arguments *sua sponte*, we need not, especially where, as here, *Sanchez* is far from explicit in overturning this Circuit's precedent if it did in fact do so. *See Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal") (quotation marks and citation omitted).

In this case, Preacely argues that his 94-month sentence was unreasonably long in light of the section 3553(a) factors, and "flouts the parsimony command" that the sentence be no greater than necessary. Because we conclude that his sentence must be vacated and remanded for procedural reasons, we need not decide whether Preacely's sentence was also substantively unreasonable.

**SENTENCE VACATED and case REMANDED for resentencing.**

GERARD E. LYNCH, Circuit Judge, concurring:

I fully concur in Judge Wallace's careful analysis, and in his conclusion that the sentence in this case was flawed by procedural error. I add a few words only to put into ordinary language the common-sense basis of the sometimes arcane or technical analysis required by our somewhat complex law of sentencing.

On a superficial level, Jamar Preacely seems to have gotten a break. The Sentencing Guidelines recommended a sentence of at least 188 months in prison, and the district court, in recognition of the value to society of his cooperation with the authorities, sentenced him to just half that. That is not an atypical reduction in this circuit for turning state's evidence in a narcotics case.

On closer examination, however, the guideline recommendation used by the district court as a baseline before rewarding Preacely for his help to the government appears distinctly inflated. Preacely pled guilty to possessing with intent to distribute more than five grams of crack cocaine; the total amount of the drug proved to have been in his possession was approximately twenty-one grams. I have no intention of minimizing the serious criminality of dealing in dangerous drugs – Preacely's own sad, addicted life before his arrest illustrates the harm inflicted by narcotics trafficking. Nor should we be naive about the likelihood that what Preacely was caught doing was the full extent of his misbehavior. But even for a man with a history of multiple (if mostly minor) criminal convictions (almost exclusively tied to the possession and sale of narcotics), a sentence of nearly sixteen years in prison for the possession of a few thousand dollars worth of cocaine seems remarkably severe.

That conclusion is not merely my personal opinion. It is in fact the conclusion warranted by the ordinary application of the Sentencing Guidelines themselves. As Judge Wallace

explains, under the complicated formulas applied by the Guidelines to determine the seriousness of offenses and the severity of an offender's prior criminal history, Preacely's offense would be treated as "level 23" and his criminal history as "category V." For someone with these scores, the ordinary minimum recommended sentence at the time of Preacely's sentencing (before any reduction for cooperation) was 84 months in prison, not 188. I do not pause to quibble over the fact that even this recommendation is affected by what many have believed, and what the Supreme Court, Congress, and the Sentencing Commission itself have now come to agree, is an excessively harsh response to the danger of crack (cocaine base) as compared to other illegal drugs. See Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010); Kimbrough v. United States, 552 U.S. 85 (2007); U.S.S.G. supp. to app. C., amend. 713 (2008); id. amend. 706 (2007). I note only that no one has ever accused the ordinary Sentencing Guidelines for narcotics offenses of being anything other than stringent.

What drove Preacely's guideline recommendation to a level more than double that severe guideline outcome is his treatment as a "career offender." In ordinary English, "career offender" is a reasonable description of Jamar Preacely. Although he is still a young man, to the point of his arrest on the present charge the only "career" he ever had seems to have been selling drugs. But in the technical jargon of the Guidelines, Preacely qualifies as a "career offender," and therefore earns an extraordinary sentence for a relatively mundane offense, based merely on two prior narcotics offenses. To put those offenses in perspective, the most serious of all his prior crimes resulted in a sentence of two to four years, but that record now puts him in line to have an already sharp seven-year prison term escalated to nearly sixteen years.

There is a significant debate about the desirability of this sort of "three-strikes"

2

sentencing, which dramatically escalates a sentence that is not only already severe, but that has in fact already been substantially increased by reason of Preacely's criminal record. (A level 23 offense would draw a recommended sentence starting at only 46 months for a first offender; the 84-month recommendation that would apply to Preacely absent the "career offender" enhancements already adds more than three years to a less than four-year jail term in recognition of the increased risk of recidivism posed by someone with his criminal history.) Once again, however, I do not address that debate, and accept that the relevant authorities have decided that such a simplistic three-strikes policy should trump the more nuanced treatment of criminal history embodied in the Guidelines' ordinary criminal history calculations.

But here's the point: the Sentencing Reform Act, as interpreted and rendered constitutional by the Supreme Court's decision in United States v. Booker, 543 U.S. 22 (2005), requires sentencing courts to treat the Guidelines only as a starting point, and then to craft an appropriate sentence taking full account of "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The career offender guideline is based on the likelihood that someone falling into that category presents an extreme danger of committing more crimes. Preacely, however, presented substantial evidence that he had reformed, and no longer presented such a danger. If that evidence were fully credited – and I note that the prosecution seems not to have contested its accuracy – Preacely's "history and characteristics," including his history of rehabilitation after this offense as well as his criminal history before it, would suggest that the 188-month guideline was not after all the appropriate baseline sentence for him. Yet the district court seems not to have recognized this point, and in weighing what sort of sentence was appropriate for him in light of his cooperation emphasized only that (as a result of the career

3

offender designation) the guidelines treated him as a "category VI" offender, which the district

court appears to have treated as a definitive declaration of Preacely's likelihood of returning to

criminality.

Let me be clear about what I am *not* saying. I am most emphatically not saying that the

district court was required to believe that Preacely was a changed man. Once caught, every

criminal knows that it is time to feign remorse and rehabilitation, and every judge has seen many

defendants who do exactly that. The district judge has had the opportunity to observe Preacely,

as we have not. That is why great deference is due to the district court's judgment as to

sentencing. Had the district court concluded that Preacely's claims of reform were exaggerated,

or altogether unworthy of belief, we would have a very different case.

But the district court evidently did not so conclude. Rather, the district court refused to

take a starting point other than 188 months, or to consider a more dramatic reward for his

cooperation, not because of a specific judgment that Preacely the man was a danger to society,

notwithstanding his claims of rehabilitation, but because of Preacely's general classification,

under the career offender guideline, as a "category VI" offender.[*]

That is what Judge Wallace's opinion correctly concludes was error. The law of the land,

---

[*] It is possible, of course, that we misread the district court's intentions here, by taking
overly literally his references to Preacely's classification under the Guidelines. Perhaps the
experienced judge was using a kind of shorthand, and meant to say that a further reduction in
Preacely's sentence was inappropriate not simply because of his guideline level, but because an
individualized assessment of his character, including the evidence of reform proffered on his
behalf, led the judge to conclude that he remained a high-risk offender. If that is so, no harm is
done by remanding the case and giving the judge an opportunity to explain his conclusion. But
great harm would be done if we upheld a sentence that imposed long years in prison on an
offender who no longer presents a danger, when a lesser sentence would better serve the purposes
of the criminal law, because the judge had given excessive weight to a guideline category that
was not appropriately applied to the defendant.

reflecting ordinary common sense, requires a judge to start with the Guidelines, and then consider whether their recommendation – which we can assume reflects a reasonable judgment about the appropriate sentence in a *typical* case – comports with what is reasonable for the particular offender. If the judge concludes that the offender before the court is indeed the incorrigible criminal for whom the career offender guideline was written, the guideline most often should be followed and the severe sentence necessary to protect the public imposed. But if the offender can convince the judge that he is no longer that kind of person, the guideline recommendation is no longer the sentence "sufficient, *but not greater than necessary*," to protect the public, id. § 3553(a) (emphasis added), but rather is excessive.

We do not hold today that Preacely's sentence was excessive, or that the district court should have accepted his claims of reform. We do hold that the district court was required to consider those claims, and not merely to rely on the fact that Preacely was classified (somewhat artificially) as a "category VI" offender, and thus to *assume* that he is dangerous, so as to require, (before being rewarded for his cooperation) a sentence more than twice what his actual crime and criminal record called for. The apparent failure to consider this evidence, and decide whether Preacely is or is not the changed man he claims (with the support of some genuine evidence) to be, warrants reconsideration of his sentence.

I add one note in response to Judge Raggi's thoughtful dissent. I would be the last to suggest any mandatory sequencing of consideration of grounds for departure, for just the reasons Judge Raggi identifies. I do think, however, that it is extremely useful to give separate consideration to that aspect of the cooperation departure that operates as a pure reward to induce testimony, regardless of the defendant's character, and the quite separate basis for mitigation that

5

relates to a defendant's potential reformation (which might be evidenced in part by his cooperation with the authorities). A sentence such as the one in this case that seems to have been calculated as a percentage reduction of a guideline sentence gives the appearance of operating only in the former dimension, and (absent a clear statement of reasons addressing both issues) supports Preacely's argument that the district court did not consider other reasons for mitigating his sentence.

REENA RAGGI, Circuit Judge, dissenting:

Today, my colleagues in the majority vacate a sentence of 94 months' incarceration, a significant departure from the 188-to-235 month Guidelines range applicable to defendant, a career offender who, at age 28, in this case pleaded guilty to his third felony drug crime. The majority and concurring opinions suggest that the challenged sentence is unduly harsh in light of mitigating circumstances, specifically, defendant's efforts to reform and cooperate in the years between arrest and sentence. They do not, however, hold that the sentence falls outside the range of choices available to the district court so as to render the term of incarceration substantively unreasonable, see Majority Op., ante at **[17]** (leaving question of substantive reasonableness unresolved), a conclusion that I think would be difficult to reach under our precedent, see United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (holding that district court's substantive determination will be set aside only in "exceptional cases" where sentence imposed "'cannot be located within the range of permissible decisions'" (quoting United States v. Rigas, 490 F.3d 208, 238 (2d Cir. 2007))); see also United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) (recognizing that in "overwhelming majority of cases," Guidelines sentence will fall within "broad range of sentences that would be reasonable in the particular circumstances"). Instead, the majority vacates and remands for resentencing based on possible procedural error, which it locates in "ambiguity" as to the district court's understanding of the scope of its discretion to depart from the Career Offender Guideline, see U.S.S.G. § 4B1.1, specifically, that part of the

1

Guideline dictating a Criminal History Category of VI.  See Majority Op., ante at **[12, 15]**.

I must respectfully dissent.  Not only do I not share the majority's concern about the district

court's understanding of its sentencing discretion, I disagree with its decision to order

resentencing without affording the district court an opportunity to clarify the purported

ambiguity.  I begin with this second point.

 1. <u>Ambiguity Warrants Clarification Not Vacatur and Resentencing</u>

Even assuming <u>arguendo</u> that the majority properly identifies ambiguity in the

sentencing record, I think the proper action would be to remand for clarification, not to

vacate and order resentencing.  Whether before or after <u>United States v. Booker</u>, 543 U.S.

220 (2005), this court has applied a "strong presumption" that district courts understand the

scope of their discretion to impose sentences that depart or vary from the Guidelines.  <u>United</u>

<u>States v. Brown</u>, 98 F.3d 690, 694 (2d Cir. 1996); <u>see, e.g.</u>, <u>United States v. Legros</u>, 529 F.3d

470, 477-78 (2d Cir. 2008); <u>United States v. Sero</u>, 520 F.3d 187, 192 (2d Cir. 2008).  We will

deem this presumption "overcome only in the rare situation where the record provides a

reviewing court with clear evidence of a substantial risk that the judge misapprehended the

scope of his departure authority."  <u>United States v. Sero</u>, 520 F.3d at 192 (emphasis

removed).  This is not such a case.

The majority does not purport to identify <u>clear</u> evidence of a substantial risk that the

district court misapprehended the scope of its sentencing discretion.  Rather it locates

ambiguity on this point in the district court's "repeated emphasis on Preacely's status as a

2

Category VI career offender." See Majority Op., ante at **[12]**. Such ambiguity might warrant a remand for clarification of the district court's understanding of its sentencing discretion. See United States v. Sanchez, 517 F.3d 651, 669 (2d Cir. 2008) (remanding "without vacating the sentences imposed" for clarification as to whether error infected the sentence).[1] To rely on ambiguity alone to order vacatur and resentencing is, to my mind, to eviscerate the "clear evidence" rule.

This is not to suggest that ambiguity may never warrant resentencing. In United States v. Jones, 531 F.3d 163 (2d Cir. 2008), we ordered resentencing after identifying ambiguity as to the district court's understanding of the scope of its post-Booker sentencing discretion, but that case arose in the unusual context of legal uncertainty on that issue in the interim between Booker and the clarifying decisions in Kimbrough v. United States, 552 U.S. 85 (2007), and Gall v. United States, 552 U.S. 38 (2007). See United States v. Jones, 531 F.3d at 181 (recognizing degree to which our own decisions had contributed to confusion). This case presents no comparable unusual circumstances.[2]

_____

[1] United States v. Sanchez explained that if clarification revealed that the sentence was not infected by a misunderstanding of sentencing authority, "the district court should not disturb the sentence imposed, and . . . need take no further action." 517 F.3d at 669. On the other hand, if the clarification revealed infection, the district court "should vacate the sentence and . . . resentence the defendant." Id.; accord United States v Keller, 539 F.3d 97, 101 (2d Cir. 2008).

[2] Although other cases pre-dating Sanchez ordered resentencing where there was record ambiguity as to a court's understanding of its sentencing discretion, see United States v. Thorpe, 191 F.3d 339, 344 (2d Cir. 1999); United States v. Ekhator, 17 F.3d 53, 55-56 (2d Cir. 1994), these cases did not consider the burden of resentencing, which requires not only a defendant's presence but consideration of an expanded record through the date of

3

Thus, to the extent the court here orders vacatur and resentencing before affording the district court an opportunity to clarify its understanding of the scope of its discretion, I dissent for that reason alone.

2.     <u>The Identified Ambiguity</u>

I further dissent because I do not think the record reveals ambiguity as to the district court's understanding of the scope of its sentencing discretion. As the sentencing transcript cited by the majority reveals, the district court frequently – and correctly – stated that the Sentencing Guidelines put Preacely in Category VI because he qualified as a career offender. <u>See</u> Majority Op., <u>ante</u> at **[11-12]** (quoting Sentencing Tr. at 11-12). The majority expresses concern that such "repeated emphasis on Preacely's status as a Category VI career offender" signals that the sentencing judge may not have "understood that he could make a so-called 'horizontal departure' from the Career Offender Guideline and adopt a lower criminal history category." <u>Id.</u> at **[12]**. It questions whether the district court understood "that the Career Offender Guideline was not mandatory." <u>Id.</u> at **[14].** I do not share these concerns.

The district court manifested an understanding of its complete discretion to sentence outside the Guidelines when it stated "I'm empowered to go to nothing," <u>i.e.</u>, to impose even a non-incarceratory sentence. Sentencing Tr. at 12. The majority construes this statement

<hr>

resentence, <u>see generally</u> <u>United States v. Sanchez</u>, 517 F.3d at 669; <u>United States v. Garcia</u>, 413 F.3d 201, 229 (2d Cir. 2005). As <u>Sanchez</u> recognized, there is no reason to impose these burdens until clarification reveals that actual error informed the sentence. <u>See</u> 517 F.3d at 669.

4

to show "only that the judge understood his authority to depart from the statutory minimum pursuant to the government's 5K1.1 motion." Majority Op., ante at **[13]**. In support, it notes that the judgment of conviction references only § 5K1.1 as the basis for departure. See id. I am not convinced. Well before Booker, it was understood that a government motion for departure pursuant to § 5K1.1 and, in the case of a mandatory minimum, 18 U.S.C. § 3553(e), restored full sentencing discretion to the district court, freeing it from both the Sentencing Guidelines and any statutory minimum. In a case where such a motion is made, it thus makes sense for a district court to reference one or both of these sections in the judgment as the basis for imposing a non-Guidelines sentence, without citing other grounds that may also have afforded a measure of departure discretion.

More to the point of this dissent, however, only a few sentences after referencing its discretion to impose a non-incarceratory sentence, the district court conclusively demonstrated awareness that it was not bound to adhere to the Career Offender Guideline by stating that it had "cut the guideline range from a Category VI." Sentencing Tr. at 12. I am hard pressed to locate any ambiguity in the district court's understanding of the scope of its sentencing discretion when the court thus states that it has granted a departure from the Criminal History Category dictated by the Career Offender Guideline and knows that its departure discretion is so complete that it could impose even a non-incarceratory sentence.[3]

---

[3] United States v. Sanchez, 517 F.3d 651, cited by Preacely and relied on by the majority, is plainly distinguishable. There, the district court not only did not signal that it was departing from the history category mandated by the Career Offender Guideline, it stated

5

Viewed in this context, district court statements cited by the majority, such as "I may not ignore his prior record. I may not ignore the guidelines," Majority Op., ante at **[13]** (quoting Sentencing Tr. at 13); and "I am dealing with a Category VI career offender, regardless of all of what you said," id. at **[14]** (quoting Sentencing Tr. at 12), are not reasonably construed – to my mind – to suggest that the district court misapprehended the scope of its departure discretion. As the majority itself acknowledges, "district courts are not . . . free to ignore the Career Offender Guideline," id. at **[11]**, a conclusion that derives from 18 U.S.C. § 3553(a)(4)(A). Indeed, precisely because the Guidelines are a § 3553(a) factor, district courts not only "begin their [sentencing] analysis with the Guidelines," they appropriately "remain cognizant of them throughout the sentencing process." Gall v. United States, 552 U.S. at 50 n.6. Thus, I think the cited references to Category VI are reasonably understood simply as the district court's explanation, by reference to a § 3553(a) factor, for why it chose not to afford Preacely the greater sentencing departure that he requested, i.e., a sentence of time served (equivalent to approximately two years' imprisonment) with a period of supervised release that included six months' confinement in a halfway house. Where, as here, a district court acknowledges its discretion to impose even a non-incarceratory sentence, a reviewing court will generally not identify substantive, much less procedural, error in the district court decision to accord more weight to a particular Guideline

---

that it was bound by the statute defining career offenders to impose sentences higher than it might otherwise have done. See id. at 657-58.

6

than a defendant urges.  See United States v. Cavera, 550 F.3d at 189 (holding that appellate court does not review weight assigned § 3553(a) factor except to determine if factor "can bear the weight assigned it under the totality of the circumstances"); see also Gall v. United States, 552 U.S. at 59-60 ("On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence.").

It appears that the majority, nevertheless, identifies ambiguity as to the district court's understanding of its departure discretion from the court's failure to indicate what departure it was making from the Career Offender Criminal History Category of VI before proceeding to give defendant consideration for cooperation pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e).  Whatever the merits of such a sequential approach to Guidelines departures, I do not think it is a procedural prerequisite to a reasonable sentence.  Gall v. United States instructs that district courts should ordinarily "begin all sentencing proceedings by correctly calculating the applicable Guidelines range," 552 U.S. at 49, but it does not require district courts to address Guidelines departures in any particular order, or even separately, much less to recalculate the Guidelines after each departure.[4]  Indeed, after Booker, district courts are

_____

[4] To the extent U.S.S.G. § 1B1.1, in establishing an order for application of Guidelines provisions, instructs sentencing courts to determine a defendant's criminal history as specified in Parts A and B of Chapter Four, see id. § 1B1.1(a)(6), before referring to the departure grounds identified in § 1B1.1(b), a question arises as to whether a § 4A1.3 departure based on an inadequate criminal history category is part of a § 1B1.1(a)(6) determination, so as necessarily to precede a § 5K1.1 departure for cooperation.  Compare United States v. Pembrook, 609 F.3d 381, 385 (6th Cir. 2010) (holding departures to be

7

liberated from one of the more unfortunate aspects of Guidelines sentencing: the bazaar-like

atmosphere of parties bargaining over the temporal value to assign discrete aggravating and

mitigating factors, a process in which it is sometimes possible to lose sight of the larger

question of what sentence is "sufficient, but not greater than necessary" to address the

---

applied at § 1B1.1(b) (previously numbered § 1B1.1(i)) stage), United States v. Darton, 595 F.3d 1191, 1195-97 (10th Cir. 2010) (same), and United States v. Tolliver, 570 F.3d 1062, 1065-66 (8th Cir. 2009) (same), with United States v. Munn, 595 F.3d 183, 193-95 (4th Cir. 2010) (holding criminal history departure applied at § 1B1.1(a)(6) (previously numbered § 1B1.1(f)) stage under pre-2003 Guidelines).

Although our court has not addressed the issue in a published decision, but see United States v. Jones, 369 F. App'x 171, 172 (2d Cir. 2010) (holding that § 4A1.3 departure does not change Guidelines range but, rather, "imposes a sentence outside the calculated range" (emphasis in original)), I am inclined to answer that question in the negative, particularly in this case where sentence was imposed after a 2003 amendment that clarified that a § 4A1.3 departure is the "assignment of a criminal history category other than the otherwise applicable criminal history category," U.S.S.G. § 1B1.1 cmt. n.1(E) (emphasis added). This language identifies § 4A1.3 not as part of the process for determining a defendant's criminal history category but, like § 5K1.1, as one of the "policy statement[s]" for departures "that might warrant consideration in imposing sentence" after calculation of a defendant's applicable Guidelines range. U.S.S.G. § 1B1.1(b); see United States v. Flemming, 617 F.3d 252, 265-66 (3d Cir. 2010) (noting that 2003 amendment appears to mean that henceforth departures apply at § 1B1.1(b) stage); United States v. Munn, 595 F.3d at 193-95 (same).

In any event, a reading of § 1B1.1(a)(6) to include § 4A1.3 departures would not necessarily favor Preacely. Section 1B1.1(a)(6) contains two sentences, the first of which instructs courts to "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four," and the second of which instructs courts to "[d]etermine from Part B of Chapter Four any other applicable adjustments." The employment of two sentences, the latter of which references "other" adjustments, might suggest sequential application, in which case a district court would apply a § 4A1.3 departure before applying a § 4B1.1 career offender enhancement. The law is to the contrary, see United States v. Mishoe, 241 F.3d 214, 219 (2d Cir. 2001) (recognizing ability to apply § 4A1.3 departure after § 4B1.1 enhancement), a conclusion consistent with viewing § 4A1.3 simply as one of the many departure grounds available for court consideration – in no particular order – at the final step of the Sentencing Guidelines process, see U.S.S.G. § 1B1.1(b).

8

statutory factors critical to just federal sentencing.  18 U.S.C. § 3553(a).

To the extent Judge Lynch expresses concern that the district court may not have satisfied its § 3553(a) obligations based on "apparent failure to consider . . . evidence" of Preacely's reform, Concurring Op., ante at **[5]**, I respectfully disagree.  As the particulars of Preacely's reform were highlighted by defense counsel in thoughtful and detailed written and oral presentations, I do not think we have any basis for thinking that the district court inadvertently overlooked such evidence.  See United States v. Villafuerte, 502 F.3d 204, 210 (2d Cir. 2007) ("[W]e do not insist that the district court address every argument the defendant has made."); United States v. Fernandez, 443 F.3d at 30 ("[W]e will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced.").  Nor is there any reason to think that the district court, which specifically stated that it had considered all § 3553(a) factors, "thought about this sentence a lot," Sentencing Tr. at 15, and "cut the guideline range from a Category VI," id. at 12, deliberately ignored the reformation evidence that provided the strongest support for such a cut.  In fact, the district court's consideration of Preacely's evidence of reform is demonstrated by its very first statement after the parties' sentencing presentations, when it observed, "Well, there is no question that he has done a lot to improve his situation."  Id. at 11; see generally United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005) (holding that "no specific verbal formulations should be prescribed to demonstrate the

9

adequate discharge of the duty to 'consider' matters relevant to sentencing"). This reinforces my view that the record does not indicate the district court's failure to consider reformation evidence or possible misunderstanding of its sentencing discretion, but only its assignment of less weight to mitigating evidence than the defendant, and possibly my colleagues in the majority, might wish. See Gall v. United States, 552 U.S. at 59-60; United States v. Cavera, 550 F.3d at 189; accord United States v. Mazza-Alaluf, 621 F.3d 205, 214 (2d Cir. 2010) ("Because the district court has a particular advantage in assessing the evidence and the defendant, we accord it considerable deference in assigning weight to relevant sentencing factors."), cert. denied, 79 U.S.L.W. 3285 (U.S. Nov. 8, 2010) (No. 10-6868).

In this respect, it is worth noting that a departure from Criminal History Category VI to Category V would have yielded a sentencing range of 168 to 210 months, well above the 94-month sentence imposed.[5] The majority elides this point by hypothesizing that if the district court had properly understood its discretion to depart from the Career Offender Guideline, it might have used a Criminal History Category of V, an offense level of 23, and

---

[5] My colleagues do not suggest that Criminal History Category V overstates Preacely's record. Four convictions contributed to that category before application of the career offender enhancement: a 1995 conviction for disorderly conduct; a 1995 conviction for selling drugs, occurring only seven days after Preacely's release on the disorderly conduct charge; a 1999 conviction for misdemeanor assault; and a 2000 conviction for another drug sale. Even without consideration of two juvenile drug dispositions, these convictions placed Preacely in Criminal History Category IV. The two facts that put him in the high end of Category V were his commission of the federal drug crime within two years of release on the 2000 conviction and while on parole. While I do not discount the significant evidence of Preacely's rehabilitation, neither can I minimize the risk of recidivism raised by this record, nor fault the district court for according it significant weight.

a resulting Guidelines range of 84 to 105 months – Preacely's Guidelines range without the career offender enhancement – as the starting point for awarding § 5K1.1 consideration. See Majority Op., ante at **[15].** The hypothesis raises several concerns in my mind.

First, it implies that the district court may have misapprehended its authority to depart from the Career Offender Guideline with respect to offense level as well as criminal history. The possibility of such a procedural error confronts a significant hurdle: the district court undoubtedly departed from the career offender offense level of 31 because, even at Criminal History Category I, offense level 31 provides for a Guidelines range of 108 to 135 months, which is higher than the 94-month sentence Preacely received. Thus, I can only assume that, here too, the majority questions the district court's awareness that it could depart from the career offender offense level before it afforded Preacely § 5K1.1 consideration for cooperation. I have already explained why I do not think the district court was required to consider departures in a particular order, especially where, as in this case, the district court acknowledged departure authority broad enough to permit it to impose a non-incarceratory sentence.

But I identify a further concern with the majority's hypothesis: it too quickly assumes that a departure from the Career Offender Guideline would necessarily have reduced both Preacely's criminal history and offense level to their original calculations. That is not apparent to me. Some grounds for departure – such as reformation – might support consideration along the criminal history axis without necessarily supporting a reduction in

11

the enhanced offense level. Other factors – such as cooperation – might support departure from the offense level without necessarily supporting a departure from the enhanced criminal history. On the record before us, I identify no basis to think that, had the district court only understood the full scope of its sentencing discretion, it might well have reduced Preacely's offense level to 23 even before assessing his cooperation. Indeed, the majority does not incorporate this hypothesis into its conclusion. It directs the district court on remand to consider only whether Category VI over-represents defendant's criminal history and risk of recidivism, without any direction to reconsider Preacely's career offender offense level before affording § 5K1.1 consideration. See Majority Op., ante at **[15]**.[6]

---

[6] There is, in fact, some reason to question whether Preacely's offense level was properly calculated at 23 before application of the Career Offender Guideline. That level is based on Preacely's trafficking in a total of 21 grams of crack cocaine, the amount recovered in two seizures. The record, however, strongly suggests that Preacely's related conduct involved a higher drug quantity. See Concurring Op., ante at **[1]** (cautioning that it would be "naive" to think "that what Preacely was caught doing was the full extent of his misbehavior"). Not only was he indicted for dealing in 50 grams or more of crack, he admitted in the course of his pre-sentence interview that he routinely dealt crack when not employed, including in the five months preceding the first seizure of drugs in this case. In short, if Preacely's Guidelines had been calculated by reference to the totality of the drugs he dealt, as seems appropriate under U.S.S.G. § 1B1.3, his offense level might well have been at least two, and possibly four, levels higher than 23. See U.S.S.G. § 2D1.1. To be sure, this is still below the level 31 mandated by the Career Offender Guideline. But it makes me question how easily one can decide on the record before us the degree to which that Guideline inflated Preacely's offense level.

I further note that the record on appeal provides little information about the conduct involved in Preacely's crimes of conviction, his possible past gang membership, or how he came to have information about the serious crimes on which he provided cooperation. I will assume that the government, in moving for § 5K1.1 consideration, has provided the district court with a full and candid account of defendant's criminal conduct both in and beyond the crimes of conviction. See 18 U.S.C. § 3661; U.S.S.G. § 1B1.8(b)(5).

Like my colleagues, I recognize that Preacely received a severe sentence despite his significant cooperation and efforts at reformation. I also recognize that other judges might have accorded these factors greater weight in mitigating the seriousness of Preacely's crime and his risk of recidivism. What I do not recognize is any basis in the record for thinking that the balance struck by the district court is infected by procedural error, specifically, by possible misapprehension as to the court's authority to depart from the Career Offender Guideline. Thus, while I see no reason to remand even for clarification, I specifically dissent from the majority's decision to vacate and to order resentencing.